## LAURE SAUCIER'S CASE.

### Androscoggin.    Opinion March 12, 1923.

*An employee, having completed her work for the forenoon and in going from her*
*place of work through two intervening rooms to the dressing-room, put her hand*
*up in front of an exhaust fan, situate twenty-one feet from the entrance of*
*the dressing-room and over five feet from the floor, to see if there was*
*any current of air, and her hand was drawn into the fan and*
*injured, is not entitled to compensation as the accident*
*resulting in the injury did not arise out of and in the*
*course of her employment.*

In this case the question to be determined is whether or not the injury described
was the result of an accident arising out of and in the course of the employ-
ment of the petitioner, and that depends upon the question as to whether
there was any evidence to support the decision of the Commission granting
compensation.

The action did not arise out of the petitioner's employment.

On appeal.    This is an appeal from a decree of a sitting Justice
approving the decision of the Chairman of the Industrial Accident
Commission.    On June 6, 1918, the petitioner, Laure Saucier, was
employed by T. A. Huston & Company at its factories in Auburn.
Her duties were to put frosting or icing on small cakes.    On the day
of the accident having completed her work for the forenoon at 11:30,
she left the room with other employees to go to the dressing-room,
preparatory to leaving for her lunch, passing through two intervening
rooms, and stepped up to an exhaust fan situate about twenty-one
feet to the right of the entrance to the dressing-room and about five
feet from the floor and put up her hand to see if any air was coming
into the room, and her hand was drawn into the fan and injured.
The question involved is, whether the accident arose out of the
employment, and that depends upon whether there was any evidence
to support the finding of the Commission.    Appeal sustained.
Decree reversed.    Petition dismissed.

The case is fully stated in the opinion.

*Dana S. Williams*, for claimant.

*Andrews, Nelson & Gardiner*, for respondents.

SITTING: SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

SPEAR, J. This is an appeal from a decree of the sitting Justice approving the decision of the Chairman of the Industrial Accident Commission. We think this case turns entirely upon the question of fact, whether the injury for which the plaintiff seeks compensation arose out of, and in the course of, the employment. The decisive question is, whether the accident arose out of the employment; and that depends upon whether there was any evidence to support the finding of the Chairman. The statement of facts sufficiently appears from the decision of the Chairman. So much of the decision as is pertinent to the issue here raised is as follows: "On the 6th day of June, 1919, the petitioner, Laure Saucier, was employed by T. A. Huston & Company at its Auburn factories. Her duties were to put frosting or icing on small cakes. On the day of the accident petitioner had been engaged at her regular work until 11:30, when she finished her work for the forenoon and in company with other employees, left the room where she had been working and started toward the dressing-room preparatory to leaving for the lunch hour. In order to reach the dressing-room Miss Saucier passed out of the room in which she performed her regular duties through an adjoining room and into a large room the entire length of which she had to traverse before reaching the dressing-room. The distance from the table where petitioner was stationed when occupied, to the dressing-room, by the route she would ordinarily take, was approximately 225 feet. To the right of the entrance to the dressing-room, a distance of approximately 21 feet, and at a height of over five feet from the floor of the room, was an exhaust fan. On the day of the accident the petitioner instead of going directly to the dressing-room, went over to the exhaust fan and put her hand up in front of it to see whether any air was coming into the room from it. Her hand was drawn into the fan and as a result she lost the thumb and index finger of her left hand and a part of the wrist bones. No part of the work of the petitioner required her to be at or near the fan. The testimony showed, however, that some times some of the girls who

worked in the factory, including Miss Saucier, ate their lunches in that part of the room where the fan was located, using the boxes which might be there for seats. The question to be determined is whether or not the injury described was the result of an accident arising out of and in the course of the employment of the petitioner."

The Chairman then proceeds to cite several decisions bearing upon the issue; and upon those cases states the ground upon which he finds the petitioner was entitled to recover. After substantially repeating some of the facts which he had already found he proceeds further to say, "She went to that part of the factory where the girls were allowed to eat their lunches and spend the noon hour. She had left no duties undone. It was not yet time to leave the factory for the noon hour. She was at a part of the mill where she had a right to be from an established custom. The exhaust fan was one of the appliances used by T. A. Huston & Company to keep the factory in a sanitary condition. Using that part of the mill as she did at times with other employees, to eat her lunch, it would be only natural for a girl of her age, only fifteen years, to investigate to see whether the air was coming through the opening where the exhaust fan was located. Such an act may have been negligent on her part, but it was not such negligence as would deprive her of the benefits of the compensation act. It was a natural thing for a girl of her age to do under the circumstances.

"It is found that inasmuch as Miss Saucier was rightfully at that part of the factory when she was injured and was not neglecting any duties required of her or performing any duty in a manner contrary to instructions or rules properly in force, and was acting in a manner reasonably to be expected of one of her age, that the injury received by her, as described was due to an accident arising out of and in the course of her employment, and that she is therefore entitled to compensation."

The right to compensation is purely a statutory right. The statute prescribes the terms and conditions upon which it may be claimed and upon which it may be awarded. The statute is based solely upon the theory, that, regardless of age, sex, ignorance or intelligence, any person whose injury comes within the terms of the statute shall be compensated, and any person whose injury does not come within the terms of the statute shall not be compensated. The Chairman three times alludes to the age of the petitioner, apparently upon the

ground that a girl of her age might be expected to do what she did; that it was a natural thing for a girl of her age to do under the circumstances; and that she was acting in a manner reasonably to be expected of a girl of her age. Granting that a girl of her age might be likely to do just what she did, does the fact of her age in the slightest degree make available to her the provisions of the statute? We think not. The question of negligence does not, in any form, arise under the statute. It was the purpose of the statute to compensate for negligence that is not wilful. Therefore, the question of whether the petitioner was doing what she did through the indiscretion of youth is entirely immaterial. Whatever induced her to try the fan, whatever her intelligence, indiscretion or purpose, if the accident arose out of and in the course of her employment, she was entitled to compensation. If it did not, whatever her intelligence, indiscretion or motive, she was not entitled to it. Accordingly, so far as the decision was based upon the fact that the petitioner was only fifteen years of age, it must be disregarded.

Regardless of her age, and of what a girl of her age might be expected to do, whether thoughtlessly, negligently or otherwise, the question is, did the accident in which the petitioner was injured arise out of her employment?

We are not able to so find. At the time of the injury, the Chairman finds that "it was no part of her work to be at or near the fan." Unless her right to compensation can be predicated upon the inference that, when she traveled twenty-one feet out of her way to reach the fan, she did what a girl of her age might naturally be expected to do, the above finding of the Chairman would exclude the conclusion that the accident "arose out of her employment." The fact that she and other girls had at times eaten their lunch on boxes near the fan can have no probative force in the case at bar, on the observance of a custom, as she was not on the boxes for the purpose of eating her lunch, nor was she going there for that purpose, at the time of her injury, as above found. She was not within the pale of the custom, if there was one. On the contrary, at the time, the petitioner was passing from her workroom, a distance of two hundred twenty-five feet, to the dressing-room, preparatory to leaving for her lunch. No custom led her to the fan. The fan was no part of the machinery for the operation of the defendant's business. It was a sanitary arrangement properly installed and presenting no dangers not

incident to any such device. The petitioner had no more occasion to go to that fan and test it than she would have had to go to the place of a circular saw, or any other dangerous machine that might be properly installed for the conduct of business, for the purpose of testing whether such saw and machine were in motion.

She went out of the way over which her business took her twenty-one feet to enable her to reach the fan. Instead of being engaged in the pursuit of her business, which was going from the workroom to the dressing-room, she left her business, not passively, but voluntarily and intentionally, to interfere with a fixture with which she, nor any other employee of the factory, had any business whatever. It is evident that the accident had no connection with her employment.

Nor are we able to find any legal principle within which it can be said that the accident "arose out of the employment." In *Westman's Case*, 118 Maine, 123, as a summary the authorities cited, it was there declared, "It might with safety be said that, in order for the accident to arise out of the employment, the employment must have been the proximate cause of the accident." It should be noted that it was not her presence in the factory nor what she might be doing, but that her employment must be the proximate cause. Proximate cause has generally been defined as the cause without which the accident would not have occurred. It has been defined in different jurisdictions as follows: "The test of proximate cause is whether the facts constitute a continuous succession of events, so linked together that they become a natural whole, or whether the chain of events is so broken that the final result cannot be said to be the natural and probable consequence of the primary cause." *Quinlan* v. *The City of Philadelphia*, 54 Atl., 1026. *Thomas* v. *Central R. Co.*, N. J., 45 Atl., 344. "The practical construction of a proximate cause has been said to be one from which a man of ordinary experience and sagacity could foresee that the result might probably ensue." *City Counsel and Montgomery* v. *Wright*, 72 Ala., 411. See numerous other cases cited in 6 Words and Phrases, Page 5763, under the caption "Foreseen or Expected Results." "In determining what is the proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence . . . such a consequence as under the surrounding circumstances of the case might and ought to have been foreseen by the wrong doer as likely

to flow from his act." *Robb* v. *Pennsylvania Co.*, 40 Atl., 969; 186 Pa., 456. "The proximate cause of an injury is that which naturally lead to, and which might have been expected to be directly instrumental in producing the result." *Consolidated Electric Light and Power Company* v. *Koepp*, 68 Pac., 608; 64 Kan., 735. "But if the injury results to employee from the doing of something which the employment neither required nor expected, or in a place where his employment did not take him, it cannot be said to arise out of the employment." *Larke* v. *John Hancock Mutual Life Insurance Company*, 97 Atl., 320.

We are unable to apply the above definitions to the petitioner's employment as the proximate cause in the present case. We are unable to see how her employment can be ascribed at all as the cause of her injury; it did not call her or require her to go to or near the fan; it was not something that happened as the natural and probable consequence of her employment, but was the result of her own voluntary act, entirely independent of any duty she was required to perform, and done for the sole purpose of satisfying her curiosity.

Paraphrasing the last case cited, which was a compensation case, her injury resulted from the doing of something which her employment neither required nor expected her to do and in a place where her employment did not take her. The foregoing definitions of proximate cause also proceed upon the assumption that the cause was one from which a man of ordinary experience and sagacity could foresee that the result might probably ensue.

We are of the opinion that it cannot be declared under the circumstances of this case that any man of ordinary prudence and sagacity could be held to anticipate that the petitioner, or anyone else, would approach that fan and voluntarily put a hand into its whirling machinery.

In the *Mailman's Case*, 118 Maine, 122, 172, we also find another definition of the phrase, "arise out of and in the course of," in which it is said, "The accident must have arisen out of and in the course of the employment." In other words, it must have been due to a risk to which the deceased was exposed while employed and because employed by the defendant. "Because" is defined in Webster's New International "by reason of; on account of." As before noted, it cannot be said that the act of the petitioner was done by reason of, or on account of, her employment.

In discussing these questions we should not confound the meaning of proximate "cause" with the meaning of "occasion." Her employment presented the occasion of her being in the factory just as the highway furnishes the occasion for a traveler to drive his team upon a defective bridge; but the defect and not the highway is the proximate cause.

From the facts as stated in the Chairman's finding, they present no evidence of, but, on the contrary, negative any causal relation between the petitioner's employment and her interference with the fan.

*Appeal sustained.*
*Decree reversed.*
*Petition dismissed.*