INA G. MARLEY, Appellee, v. ORVAL P. JOHNSON & COMPANY et al., Appellants.

No. 41451.

OCTOBER 25, 1932.

Havner, Flick, Huebner & Powers and Simmons & Simmons, for appellee.

Hallagan, Fountain & Stewart, for appellants.

DE GRAFF, J.—It is necessary to set out a brief statement of the facts disclosed by the evidence upon which the determination of the important issue of this case rests.

Orval P. Johnson, the appellant, was the sole proprietor of the business, operated under the trade name of "Orval P. Johnson & Company," engaged in selling coal, sand, cement, and the manufacture and sale of cement blocks, and in addition engaged in cement work as a contractor in Fairfield, Iowa.

In the summer of 1930 Johnson had a contract to dig a trench and lay therein a concrete base for a stone coping to be placed around a burial lot, known as the Frame lot, in the public cemetery in the city of Fairfield, Iowa. Work was started in excavating the trench on the morning of August 20, 1930, after which Johnson went up town to hire someone to help with the work. He met E. E. Marley, the deceased, who had worked for him on previous occasions, and hired him to work on this particular job. Nothing was said about the means whereby Marley was to be transported to the cemetery which was about a mile distant. Marley resided about three blocks from the cemetery. He reached the working place at the cemetery between nine and ten o'clock that morning, arriving there in his own Ford automobile, which he parked not far from the Frame lot. Marley proceeded with the work in assisting two other employees of Johnson, one of whom, Wright, appears to have been sort of a "straw boss." During the afternoon of this day, Johnson came to the place to inspect the work and saw Marley's car parked west of the Frame lot. The employer had provided a Ford truck for the men to ride in to and from the place and to convey the tools and equipment necessary for the work and to haul the dirt from the excavation. There was no enforced rule that the workmen should ride to and from the working place in this truck, and Johnson had no objection to Marley's use of his own car in transporting himself to and from the place of work. The entire cemetery is a series of

hills and the roadways are somewhat steep. Marley had made seven trips to and from the Frame lot, four on the day he commenced work and three on the following day, and on all but one trip to the place had parked his Ford car near the Frame lot, headed down hill. On the afternoon of August 21, 1930, word was relayed to the workmen to go to Johnson's shop or yard down town when the trenching work was finished so that the equipment used for mixing concrete and pouring it could be made ready by them for the next day's work. This trench was completed about five o'clock in the afternoon. The rate of wage paid the men, including Marley, was to be forty cents per hour, and ten hours constituted a day's work. Wright was the only workman on this job who had been in the continuous employment of Johnson for the year immediately preceding. Marley had been employed on various other occasions by Johnson, generally for unloading coal. The other man, Finger, was a new employee. Wright and Finger had used the Ford truck belonging to Johnson in going to and from the Frame lot. At about five o'clock on August 21, 1930, after the tools and equipment had been loaded by the men, into the truck, Wright and Finger left with it to go to the Johnson yard down town. Altho there was nothing said by Marley that he was going to Johnson's yard and finish out the day's work there, as instructed by Johnson, it must be assumed that such was his intention, in the absence of any evidence to the contrary. Under the conditions existing it is reasonable to presume that Marley would go in his own car from the place it was parked, near the Frame lot, to Johnson's yard, as he had about one more hour to work on that day, and was still in the course of his employment.

Johnson arrived at the Frame lot to inspect the work some time after five o'clock, and found the men had gone from there. He saw a car down the hill, where it had crashed into a monument. He went down to the place and found Marley lying on the ground some six feet from the car and badly injured. On being questioned when found by Johnson, Marley said that he had cranked his car; that it had run over him; and that he had crawled to the place where he was lying. The car was about 120 to 130 feet down hill from the Frame lot. It appeared to have left the driveway on the north side, run through the grass, and struck the monument. While the record does not show that the car referred to as having crashed against the monument was identified as the Ford car belonging to

Marley, it appears that in the hearing it was taken for granted that it was Marley's car. Marley died soon after from the injuries received in this accident.

But two questions are to be decided by this court: (1) Did the injury received by Marley, which caused his death, arise out of and in the course of his employment by Johnson? (2) Was the wage earned by Marley in this employment sufficient to sustain the amount of weekly compensation awarded? Before arriving at a determination of these questions it is necessary to consider the proceedings leading up to this appeal. After the arbitration hearing, at which all of the evidence in the record was introduced, the Deputy Industrial Commissioner filed his decision on January 19, 1931, reading as follows:

"Upon the record it is held:

"(1) That E. E. Marley met his death August 21, 1930, in an accident arising out of and in the course of his employment by the defendant employer.

"(2) That the deceased's average weekly wage at the time of his fatal injury was $23.07.

"(3) That Ina G. Marley, claimant herein, is the widow of the deceased E. E. Marley, and as such qualifies as the sole compensation beneficiary.

"Wherefore, the defendants are hereby ordered to pay the claimant $13.84 a week for 300 weeks, payment starting as of the death of the workman. In addition thereto the defendants are ordered to pay the statutory burial benefits and the costs of the hearing."

This decision was filed in accordance with the requirement of Section 1446, Code of 1927, which provides as follows:

"The decision of the board of arbitration, together with a statement or certificate of evidence submitted before it, its findings of fact, rulings of law, and any other matters pertinent to questions arising before it, shall be filed with the industrial commissioner."

From the record it appears that the decision referred to and a transcript of the evidence introduced at the arbitration hearing were all of the documents filed with respect to the requirements of Section 1446. It will be noticed that the "findings of fact" and "rulings of law" were not separately stated in the holding num-

bered "(1)" of the decision, as was apparently contemplated by Section 1446.

In due time a petition for review by the Industrial Commissioner was filed, and after the case was submitted, tried and argued before him upon the record previously made, his Review Decision was duly filed, which for our purpose reads in part as follows:

"E. E. Marley, husband of the claimant, was fatally injured in the service of the defendant employer, August 21, 1930, at Fairfield, under circumstances substantially as follows: For a considerable period the deceased had worked intermittently for this company. The day previous to his injury he had been taken on for temporary service and sent to the Fairfield Cemetery to assist in digging a trench for concrete coping around a burial lot. He worked the remainder of that day and most of the following. This job was completed late in the afternoon of the second day and the deceased was advised to report to the shop, as the employer testifies, 'so we could pour concrete the next morning.' Marley had been using his own car in going to and returning from this work. When the job was finished, two fellow workmen set out for the shop in a truck belonging to the employer that had been used in the cemetery work. Shortly thereafter Johnson had occasion to go to the cemetery. There he found Marley in a badly injured condition, due, as the record shows, to the incident of cranking his car, which, headed down an incline, ran over him as the engine started. Death was the early result. Since it is manifest from the record that the injury and death of E. E. Marley arose out of and in the course of employment and that the arbitration finding as to the award is in accordance with the law and the facts, the arbitration decision in all the findings is affirmed."

While the record here does not show what contentions were raised by appellant's counsel, in this review, against the decision of the arbitration board, it must be assumed that at least two important questions were presented: (1) That Marley's injury did not arise out of and in the course of his employment; and (2) that the wage earned by him in the employment was not sufficient to sustain the weekly compensation awarded.

The Industrial Commissioner's "Review Decision" was filed in accordance with Section 1448, Code of 1927, which reads as follows:

"The decision of the industrial commissioner in any case on

review before him shall be in writing, filed in his office, and shall set forth his findings of fact and conclusions of law."

The Industrial Commissioner considered two questions which he decided in his decision:

(1)  Was the claimant (workman) justified in the use of his own automobile in connection with this service?

(2)  If this right is established, did the workman forfeit compensation benefits for injury arising out of employment in failing to park his car on the highway instead of the cemetery?

Without setting out the reasoning of the Industrial Commissioner here, the result thereof is clearly expressed by the following statement:  "On neither of these counts does the case of claimant fail."

On due appeal to the District Court, the District Court affirmed the Industrial Commissioner, and in its decree stated:

"The industrial commissioner having made, certified and filed in the office of the Clerk of this Court a full and complete transcript of all the documents in said case, including all depositions taken, offered and read in evidence, if any, and a certified transcript of the evidence adduced at the hearing on review before the Iowa Industrial Commissioner, together with appellants' notice of appeal, this Court finds it has jurisdiction of the parties to and the subject matter of said appeal, and this Court having reviewed said record certified by the Iowa Industrial Commissioner, and having heard and read the arguments and briefs of counsel for the said parties, is now fully advised in the premises and finds that the findings of fact and award made by the Iowa Industrial Commissioner in his opinion, dated March 18, 1931, are amply supported by the record herein, and the law, and said award and findings of fact are hereby affirmed."

This statement of the proceedings has been set out for the reason that, in some respects, this court's powers are limited on appeals in workmen's compensation cases.  Section 1452, Code 1927, provides that:  "In the absence of fraud, the findings of fact made by the industrial commissioner within his powers shall be conclusive."  This court has said:

" "* * * the courts may not interfere with the findings of fact, made by the industrial commissioner, when these are supported by

evidence, even though it may be thought there be error.' " Bushing v. Iowa Railway & Light Co., 208 Iowa 1010.

See, also, Pace v. Appanoose County, 184 Iowa 498. This court is limited in its review upon appeal to questions decided by the trial court. Herbig v. Walton Auto Co., 186 Iowa 923. It will appear from the district court's decision in this case that the questions decided were whether the findings of fact and award made by the Industrial Commissioner were correct. It was so found by that court.

There is no conflict in the evidence as to the circumstances under which the injury was received. Whatever conflict exists appears from the argument of respective counsel, involving the question whether, with all circumstances admitted, Marley's injuries which caused his death arose out of and in the course of his employment. It is contended on one side that because Marley used his own Ford car for his own convenience in going to and from his working place he took himself out of the course of his employment, and because he met with his injury in starting the engine of the car while it was, as parked by him, in a dangerous place to start, such injury did not arise out of his employment, but from a danger or hazard not connected with his employment. The contrary view, as contended by the other side, while admitting the circumstances under which Marley sustained his injury, maintains that the injury arose out of and in the course of his employment. This conflict of contentions gives rise to an important question. Is it to be considered as a finding on the factual side or a conclusion of law? This court said in Mallinger v. Webster City Oil Co., 211 Iowa 847:

"It is difficult at times to differentiate between .findings of fact and findings or conclusions of law. * * *, where the ultimate conclusion can be arrived at only by applying a rule of law, the result so reached embodies a conclusion of law, and is not a finding of fact."

In several cases this court has treated such finding as a finding of fact. "The fact question in the case is as to whether or not the appellee received an injury arising out of and in the course of his employment * * *." Antonew v. N. W. States P. C. Co., 204 Iowa 1001.

See also Kraft v. West Hotel Co., 193 Iowa 1288; Buncle v.

Sioux City Stock Yards Co., 192 Iowa 555. In Kyle v. Greene High School, 208 Iowa 1037, we treated it in another way by the question:

"Did the injury to Kyle arise out of and in the course of his employment, within the purview of paragraph 6 of Section 1421 of the Code of 1924?"

Here the law was brought into the question. All of this is important by reason of the limitation placed upon the courts in Section 1452, as quoted heretofore, regarding the conclusiveness of the Industrial Commissioner's "findings of fact."

We are inclined in this case to say that the determination of whether or not Marley's injury arose out of and in the course of his employment is a conclusion of law, based on the record facts found by the Industrial Commissioner. In Guthrie v. Iowa Gas & Electric Co., 200 Iowa 150, this court said:

"We have repeatedly held that, where the evidence in a case of this kind is in conflict, the finding of the Industrial Commissioner upon disputed facts is binding upon us. But where the facts are not in dispute, it is within the province of this court to review the conclusion of the commissioner, based upon such undisputed facts, and to determine whether or not there is 'sufficient competent evidence in the record to warrant the making of the order or decision.' "

See also Johnston v. C. & N. W. Ry. Co., 208 Iowa 202; Tunnicliff v. Bettendorf, 204 Iowa 168; Flint v. City of Eldon, 191 Iowa 845. The conflicting contentions of the parties to this action, based upon the undisputed facts adduced by the evidence, bring us squarely to the question whether or not Marley's injury arose out and in the course of his employment within the purview of the Iowa Workmen's Compensation Law. Both of these factors, viz., "arose out of" and "in the course of," must be found to have existed jointly at the instant of the injury.

The evidence shows, and there is no conflict, that Marley was in the act of transporting himself, by using his own Ford car, from one place of work to another, both being places where the employer's business required his presence during his employment. He was permitted to choose his own means of transporting himself from the one place to the other. He had his own automobile near the place where he was working, and there were no requirements of his employment that he should not use his own car in going from

there to the employer's yard to finish out the day's work. He was in the course of his employment when going from the Frame lot to the employer's yard. In choosing his automobile as the means of transporting himself, Marley was subject to the hazards and dangers attending the operation of an automobile. If he operated the car in a negligent manner he was in no different position than he would have been had he used any tools or equipment of the employer in a negligent way. Negligence on the part of an employee is no defense in Workmen's Compensation cases. If Marley's injury had been sustained through an attempt to start the employer's Ford truck used in the work in a similar manner as that apparently used by him in starting his own car, notwithstanding that such manner appeared to be dangerous and negligent, there would be no question about the right to compensation. As said in the Kyle case, 208 Iowa 1037:

"It is a well settled general rule that an injury suffered by an employee in going to or returning from the employer's premises, where the work of his employment is carried on, except in special instances, does not arise out of his employment so as to entitle him to compensation. * * * (Citing cases.) An exception to the aforesaid general rule is found in cases where it is shown that the employee, although not at his regular place of employment, even before or after customary working hours, is doing * * * some duty incidental to the nature of his employment in the interest of, or under the direction of, his employer. In such cases, an injury arising en route from * * * the place of performance of the work * * * is considered as arising out of and in the course of the employment." (Citing cases.)

The employer, Johnson, directed Marley to go from the Frame lot to the yard, and left it to Marley as to how he was to perform this duty. Marley had the choice of his means of transporting himself from the one place to the other. He chose his own car, and in his attempt to perform a duty incidental to his employment and in the interest of his employer, he was injured. In the absence of any orders to the contrary, Marley had a reasonable right to use his own car in going to the yard from the Frame lot. If he, as charged, had been negligent in parking his car in a place where it was dangerous to start it, or in the method taken to start it, he did no more than he would have done had he been negligent in

some other way in performing his duty under his employment, assuming always that there was no wilful intent to injure himself by such act.

■■■ II. The appellants, Johnson & Company and the insurance carrier, Iowa Mutual Liability Insurance Company, assign error in that the computation of weekly compensation payments awarded by the Industrial Commissioner and affirmed by the District Court is contrary to law and without support in the evidence, and further, the Commissioner erred in the determination of Marley's average daily wage.

The record discloses that Marley had not been an employee for a full year immediately preceding his injury. Subsection 4 of Section 1397, Code 1927, provides two methods for computing the average daily wage in determining the weekly rate of compensation of an employee who at the time of his injury has not been an employee for a full year. The first method therein provides that the compensation shall be computed according to the annual earnings which persons of the same class in the same or neighboring employments of the same kind have earned during such period. If this method of computation is impossible or shall appear to be unreasonable, the second method of computation prescribed in the subsection cited is that the average daily earnings of the injured employee for those days he worked shall be multiplied by 300 to determine the statutory annual earnings. In the instant case the evidence shows, without dispute, that Marley's average daily wage was $4 and that his working hours per day were 10. Johnson employed but one man, named Wright, who had worked a full year preceding Marley's injury. Therefore, the only person whose earnings are available for comparison are those of Wright, who is a person of the same class as Marley. They both received the same daily wage and performed the same character of work. When we compute the claimant's weekly rate of compensation by using Wright's earnings and applying the 300-day rule, which formula has been prescribed by this court, we have the following equation: Wright's average daily wage of $4.00 $\times$ 300 $\div$ 52 $\times$ 60% = $13.84. The result gives the weekly rate of compensation that was awarded to the claimant. The question here involved is no longer an open one in this state. Clingingsmith v. Jackson Dairy Co., 202 Iowa 773, l. c. 777; Richards v. Central Iowa Fuel Co., 184 Iowa 1378; Zenni v.

South Des Moines Coal Co., 191 Iowa 381; O'Callahan v. Dermedy, 197 Iowa 632.

The number of hours commonly regarded as a day's work in the employment of workmen in this case is 10. Under the practice or precedent in this state, ever since the adoption of the rule in Richards v. Central Iowa Fuel Co., 184 Iowa 1378 (April, 1918), the earnings for a number of hours commonly regarded as the day's work for the employment are used by the Industrial Commissioner in computing the average daily wage. The compensation statute (Sec. 1397), Subsection 7, reads:

"Earnings, for the purpose of this section, shall be based on the earnings for the number of hours commonly regarded as a day's work for that employment, and shall exclude overtime earnings."

The evidence, without conflict, shows that 10 hours were commonly regarded as the day's work in the employment in which Marley was engaged at the time he sustained the injury which caused his death.

We conclude that the Industrial Commissioner was right in making the computation in this case and awarding same at the rate of $13.84 per week for a period of 300 weeks, and therefore, the judgment of the trial court in affirming the Industrial Commissioner must be—Affirmed.

STEVENS, C. J., and EVANS, KINDIG, WAGNER, and BLISS, JJ., concur.