Hillsborough, } No. 3468.
April 4, 1944. }

MARCEL BERNIER, *by his next friend*

*v.*

GREENVILLE MILLS, INC.

*Thomas J. Leonard* (*John E. Allen* on the brief, *Mr. Leonard* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

PAGE, J.   The plaintiff went to work for the defendant when he was sixteen and was injured on April 17, 1942, when he had been employed for four weeks.   His work in the defendant's textile mill consisted in part of opening packages of bobbins and putting them into drums for use.   The plaintiff had to use shears to cut the iron straps that bound the packages, and the shears were hung on a post on the floor below that where the plaintiff performed his chief duties.

On the day of his injury the plaintiff, in the course of his duties, had to go to the lower floor to get the shears.   After going down stairs he had to pass three machines, one of which, the shearer, was then in operation.   The plaintiff stopped near this machine for a brief time to talk with another operative.   While thus talking, he put his hand on the cloth passing through the shearer, his hand came into contact with the knives, and he lost all four fingers of the left hand.

The shearer was designed to cut off threads left hanging after the cloth was woven.   The cloth passed between two sets of knives above and two below.   Each set was constructed something like a lawn mower.   A hood over the knives permitted air to suck the threads away from the cloth so that the knives would cut them. One set of the upper knives had some sort of a guard.   The other

set was unguarded, and it was this set that cut off the plaintiff's fingers.

One situated as the plaintiff was could see the loose threads standing erect, and the plaintiff did see them. He testified that he could also see something turning, but, being wholly unfamiliar with the machine, did not know that it was a set of knives; that he was curious to know how the cloth felt and why the threads rose; and for that reason he put his hand on the cloth near the suction pipe, and the suction drew his hand in. He had never received any sort of warning about the machine, and inferentially had not been forbidden to touch the cloth.

Upon this evidence the Presiding Justice properly found that the injury was due "merely to his attempt to satisfy his curiosity as to how the cloth felt and how the machine operated." The defendant argues that when the plaintiff thus acted out of mere curiosity he stepped aside from the course of his employment, that the employment was not a cause of his injuries, and consequently he is not entitled to compensation. The Presiding Justice found, however, that the plaintiff's "investigation was not expressly forbidden by the defendant and was something that reasonably might be expected as a natural thing on the part of a boy of the plaintiff's age, experience and apparent mentality." The controlling effect of this finding, if sustainable, is admitted by the defendant.

The expectability of the exercise of mere curiosity is not the sole test of whether there was a departure from the course of employment and whether the employment was in any part causal of the plaintiff's injuries. In *Whitham* v. *Gellis*, 91 N. H. 226, an employee at a filling station left, crossed the street to a store, made a purchase for his personal use, and was hit by a truck as he was returning to the station. His errand was not forbidden and was one "reasonably to be undertaken." It was found that the errand was a "natural incident" of the employment. "Taking into account the nature of his errand which called for no time or distance amounting to an absence in breach of the terms of his employment, the conclusion is that the accident arose out of as well as in the course of the employment. . . . One, though not the only, cause of the decedent's accident was his employment within the course of which he was acting at the time." The important test is to ascertain whether the employment caused the accident "in the sense that but for the work he was doing it would not have occurred when it did." *Guay* v. *Company*, 83 N. H. 392, 395. In answering that question this

Court has always given a liberal construction to the compensation act.

In the present case the immediate instrument of the plaintiff's injury was a machine of the defendant's, not of a stranger. The plaintiff's employment in contiguity to this machine was findably causal, at least in part. The effect of a boy's curiosity while on the job was no greater than the chance of the filling station attendant getting into the way of an automobile in the *Whitham* case, nor was the injury any less findably "a natural incident" of the employment. Clearly the plaintiff's act in putting his hand on the cloth, whatever motivated it, was findably not forbidden but was findably one reasonably to be permitted. There is no conclusive evidence, if in fact there is any, that the plaintiff's act amounted to wilful misconduct. R. L., *c.* 216, *s.* 10. The defendant takes nothing from its exceptions bearing upon the question of liability.

Compensation is to be awarded on the basis of the minimum of eight dollars a week. The number of weeks to be allowed under R. L., *c.* 216, *s.* 23 is in dispute. The loss of the index finger is rated by that section for twenty-five weeks' compensation, plus the actual healing period not in excess of eighteen weeks. The actual healing period in this case was findably eighteen weeks, but not substantially more. The allowances for the middle finger are twenty weeks, with not in excess of twelve weeks for healing. For the ring finger the allowances are fifteen weeks, plus not more than eight weeks for healing. For the little finger they are ten and eight. The allowance made below for healing was the total of the four maxima, or forty-six weeks, a period greatly in excess of the actual healing period. While the allowances for the loss of the members are cumulative (*Helme Company* v. *Baranowski*, 84 N. J. L. 531), we believe that the legislature intended that the healing allowances in case of the loss of two or more fingers, should be concurrent rather than cumulative. It seems obvious enough that the healing-period allowances were not additions to the allowances for loss of members, but were intended to compensate for time lost during the healing process. The provision that in no case shall the healing period allowed be more than the actual period points in that direction.

If the legislature had intended the healing-period allowances to be cumulative, the maximum healing period for the loss of the thumb and four fingers would be seventy weeks, whereas for the loss of the whole hand it has allowed a maximum of only thirty-two weeks. If the total allowances for both compensation and healing be considered,

the maximum for the whole hand is one hundred and seventy-two weeks. But on the theory that the healing allowances are cumulative, a man might lose his thumb and four fingers on one hand, retain a stump of some usefulness, and still be allowed one hundred and eighty weeks. We think that no such intent is properly to be assigned to the legislature. The plaintiff is entitled to the maximum healing allowance of eighteen weeks for his index finger. The healing allowances for the other three fingers, twelve, eight and eight weeks respectively, are concurrent. From the award of $1,181.20, should be deducted twenty-eight weeks at eight dollars, or $224.

*Judgment for the plaintiff for $957.20.*

All concurred.