## BETHLEHEM STEEL CO. v. PARKER et al.

No. 2746.

District Court, D. Maryland.

Feb. 25, 1946.

Ewing, Rouse & Morton and John G. Rouse, Jr., all of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., and Virgil Van Street, Asst. U. S. Atty., of Catonsville, Md., for defendant.

CHESNUT, District Judge.

The complaint in this case seeks to set aside an award made by the Deputy Commissioner under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The Deputy Commissioner has filed a motion to dismiss the suit.

The facts of the case are not in dispute. They are stated in the Deputy Commissioner's findings, and briefly summarized, are as follows. On May 26, 1945, the vessel A.E.–18 was afloat in the Patapsco River near Baltimore being repaired by the em-

ployer, the Bethlehem Steel Company. The employe, Virginia R. Ervin, a young woman, was engaged in work upon the bridge deck of the vessel as a "burner". By permission she left the bridge deck to obtain a drink of water at a drinking fountain on a lower deck. A reasonable and permissible route to reach the drinking fountain was through the ship's galley on the lower deck. After obtaining the drink of water she was returning to her place of work and in going back through the galley she noticed an opening in the wall some distance from the floor which later turned out to be the open panel of a dumb waiter shaft. Apparently not knowing what it was, she placed her head in it to look upwards, probably impelled by curiosity. At that moment the dumb waiter descended and struck her on the head causing substantial injuries. The galley was apparently not in use at the time and there was no evidence to show why the dumb waiter descended or fell. The employe had been engaged in industrial work for a year or more previously and had had a short course of training therefor but had little experience in working on large vessels and was unfamiliar with their construction and equipment, her work previously having been mainly on barges. She did not violate any specific work or safety rule promulgated or enforced by the employer and had no wilful intention to injure herself and apparently was unaware that her action in thus looking into the dumb waiter shaft was possibly dangerous.

In making the award the Deputy Commissioner expressed his view as follows: "that she was imbued with all the natural and not inconsiderable amount of curiosity inherent in her sex; that her impulsive reaction to the situation placed before her by the conditions under which the work was performed, while constituting conduct immediately irrelevant to the job, was not sufficient to break the nexus between workman and employer; that under all of the circumstances, it is found that the accident arose out of and in the course of employment."

Without wholly adopting this precise reasoning, I have concluded after a study of the numerous authorities brought to my attention in the excellent brief by counsel for the employer, and from further independent research, that the result reached by the Deputy Commissioner is correct; and the motion to dismiss the complaint must be granted.

The scope of review is prescribed by section 921 of the Act. The award may be set aside only "if not in accordance with law." Norton, Deputy Commissioner, v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931. Counsel for the Deputy Commissioner contends that the award should not be set aside because it is supported by evidence at the hearing conducted by the Deputy Commissioner, South Chicago C. & D. Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Parker v. Motor Boat Sales Co., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; but as there is no dispute here either as to the facts themselves or proper inferences therefrom, I take the view that the conclusion of the Deputy Commissioner presents purely a question of law which is properly subject to review in this proceeding.

The sole question involved is whether the facts bring the employe's injuries within the coverage of the statute. Section 903 (Coverage) provides:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) * * *.

(b) No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another."

Section 902 (Definitions) provides:

"2. The term 'injury' means accidental injury or death *arising out of and in the course of employment,* and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment." (Italics supplied.)

Other provisions of the statute which are relevant here are:

Section 904 (Liability for Compensation): "(b) Compensation shall be payable irrespective of fault as a cause for the injury."

Section 920 (Presumptions) provides:

"In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary—

"(a) That the claim comes within the provision of this chapter.

"(b) That sufficient notice of such claim has been given.

"(c) That the injury was not occasioned solely by the intoxication of the injured employee.

"(d) That the injury was not occasioned by the willful intention of the injured employee to injure or kill himself or another."

■ The question of law whether liability exists in this case is, I think, a close one. The answer to it depends largely on the underlying philosophy as to the purpose and scope of the Longshoremen's Act. In general it follows the pattern of State Workmen's Compensation Acts but more particularly its phraseology was taken from the New York Act, Consol.Laws N.Y. c. 67. Wheeling Corrugating Co. v. McManigal, 4 Cir., 41 F.2d 593, 595; Terminal Shipping Co. v. Branham, D.C.Md., 47 F.Supp. 561, 564, affirmed 4 Cir., 136 F.2d 655. It frequently has been judicially said that the Act is to be liberally construed in favor of the injured employe or his dependent family. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 52 S.Ct. 187, 76 L.Ed. 366; De Wald v. Baltimore & O. R. Co., 4 Cir., 71 F.2d 810, certiorari denied 293 U.S. 581, 55 S.Ct. 94, 79 L.Ed. 678.

The precise legal question presented is whether the employe's injuries arose "out of and in the course of employment". There is no difficulty in finding that the injury arose "in the course of employment"; but the question is whether it arose "out of" her employment. As I have indicated, the proper application of this phrase in the statute to the facts of this case depends very largely upon the judicial concept of the purpose and scope of the statute as a whole. These compensation statutes constitute a substituted remedy for those which an injured employe had at common law, based primarily on negligence of the employer and subject to be defeated by contributory negligence of the employe, and the very well-known defenses of the fellow servant doctrine and the assumption of risk. This fundamental conception of liability was changed by the statute which expressly provides that "compensation shall be payable irrespective of fault as a cause for the injury". Section 904(b).

■ The purpose of the statute was well expressed by Judge Parker for this Circuit in the comparatively recent case of Wheeling Corrugating Co. v. McManigal, supra, 41 F.2d at page 595: "Its purpose is to extend to the workers upon navigable waters of the United States, who cannot be reached by state legislation, the benefits of a compulsory system of compensation for disability or death resulting from injuries received in the course of their employment. This system of compensation is based, not upon ancient fictions of the law, but upon the principles of industrial insurance in application of the theory that industrial accidents, whether due to the negligence of the worker or not, are a hazard of the business; and that they should be borne, not by the individual worker, but by the industry in which he is engaged."

The phrase "out of" and "in the course of" employment was familiar in the common-law relation of master and servant, possibly more frequently expressed as "scope of employment". See 39 C.J. 278. It is, therefore, perhaps not surprising that in the earlier cases dealing with a similar phraseology in compensation statutes, the courts leaned very heavily upon the application which had been judicially previously given to the phrase in the common-law cases. But the trend of judicial opinion in recent years has been very distinctly away from this earlier conception of the scope and purpose of Compensation Acts. An illustration of this tendency can be found in the cases of injuries resulting from so-called "horse play". The early cases quite generally denied liability in such cases. See Annotations in 13 A.L.R. 540, 46 A.L.R. 1150. But in more recent cases injuries received by an employe through "horse play" have frequently been held compensable, especially if the injured employe has not been the aggressor or a wilful participant. Brown, 8 Wisc.Law Rev. 229; West Penn Sand & Gravel Co. v. Norton, 3 Cir., 95 F.2d 498; Hartford Accident & Indemnity Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 16. Cf. Ackerman v. Cardillo, 78 U.S.App.D.C. 310, 140 F.2d 348; Fazio v. Cardillo, 71 App.D.C. 264, 109 F.2d 835, and see majority and minority opinions in Hill v. Liberty M. & E. Corp., Md., 45 A.2d 467. In applying the phrase "out of" employment, the later cases emphasize the importance of the working and environmental conditions. In many cases the injuries are held compensable where the precise cause of the accident is incidental thereto although not

strictly relevant to the performance of any duty by the employe. Hartford Acc. & Indemnity Co. v. Cardillo, supra; Leonbruno v. Champlain Silk Mills, 229 N.Y. 470, 128 N.E. 711, 13 A.L.R. 522. This last-cited case is particularly relevant because, as already noted, the federal Act is patterned quite closely on the New York Act. See again West Penn S. & G. Co. v. Norton, supra.

In the instant case it is clear enough that the immediate cause of the employe's injury was due to her action in looking up the dumb waiter shaft; and that in doing so she was not performing any duty that was required by her or even relevant to her employment as a "burner" on the upper deck of the ship. It would follow, therefore, if one follows the lines of the earlier cases with their narrow and technical construction of the phrase "out of", the particular injury would not be compensable. But it is also clear on the facts that her action was not in any sense a striking or intentional departure from her duties but at most a slight and casual one occasioned apparently by not unnatural curiosity on her part to see something which attracted her in her unusual environment arising in the course of her general duty to return to her work on the upper deck. The facts found by the Deputy Commissioner exclude any knowledge or even suspicion on her part that her casual action was or would be accompanied by any likelihood of danger to herself or to any one else. It is clear, therefore, she was not within the special exception in the statute which has been above quoted.

The point against liability most strongly urged by counsel for the employer is that the injury was directly attributable merely to "curiosity" on the part of the employe. His brief reviews a number of decisions to the effect that injuries resulting from mere curiosity on the part of the employe are noncompensable. Typical of such cases are Saucier's Case, 122 Me. 325, 119 A. 860; Peterman v. Industrial Comm., 228 Wis. 352, 280 N.W. 379; Maronofsky's Case, 234 Mass. 343, 125 N.W. 565; Cennell v. Oscar Daniels Co., 203 Mich. 73, 168 N.W. 1009, 7 A.L.R. 1301 and Annotation p. 1305. But an examination of these and other cases of the same nature will show that for the most part they were decided many years ago when the courts were still under the influence of the narrow and technical construction of the scope of the Com-

pensation Acts; and in a number of cases at least the actions of the injured employes, motivated by curiosity, related to conditions which were or should have been known to the employe to be definitely dangerous. Curiosity itself as the cause of the action leading to the injury is only one element in the problem of determining whether the particular act was within or without the scope of the employment. Thus, it was well said by the court in Bernier v. Greenville Mills, Inc., 93 N.H. 165, 37 A.2d 5, 6 (a curiosity case), "The expectability of the exercise of mere curiosity is not the sole test of whether there was a departure from the course of employment and whether the employment was in any part causal of the plaintiff's injuries."

In this latter case the award of compensation was sustained despite the fact that the employe's accidental injury was caused by his doing something from mere curiosity. And Derby v. International Salt Co., Inc., 233 App.Div. 15, 251 N.Y.S. 531, is to the same effect.

It is unnecessary to attempt a meticulous review of the hundreds of cases in the federal and state courts under these numerous compensation statutes. It is sufficient to say that hardly any two cases are precisely alike on the facts and there is no certain and uniform rule to be deduced from the many decisions of many courts dealing with the subject. Circuit Judge Rutledge (now Mr. Justice Rutledge of the Supreme Court) has been at pains to classify many of these cases in Hartford Acc. & Indemnity Co. v. Cardillo, supra. The philosophy of the decision in that case is, I think, in accord with the modern tendency of the decisions upon the subject. He said in generalizing about the scope and purpose of the act (112 F.2d at page 17): "The provision is: 'No compensation shall be payable if the injury was occasioned solely *by the intoxication of the employee* or *by the willful intention of the employee* to injure or kill himself or another.' (Italics supplied.) This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc.,

unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act. It is entirely inconsistent with reading into the statute the law of tort causation and defense, where liability is predicated on fault and nullified by contributory fault. We are committed by the statutes and our previous decisions against the test of immediate relevancy of the precipitating act to the task in hand."

With this understanding of the purpose and scope of the statute, I conclude that the facts of the case make the employe's injuries compensable. Even treating the case as a doubtful one, that doubt should be resolved in favor of the employe. It is true that to be within the coverage of the Act it must be found that her injuries arose "out of" her employment; but it is not necessary that her immediate action which precipitated her injury should have been directly relevant to her general work. Her action in looking into the dumb waiter shaft was doubtless a thoughtless and casual one but not accompanied by any sense of danger to herself, and clearly not a wilful act to inflict injury upon herself or another. Although apparently prompted by curiosity, I think it may be properly classified as an action which was occasioned by and incidental to her environment.

Counsel may submit the appropriate order in due course.