16419

## JORDAN v. DIXIE CHEVROLET, INC., *ET AL.*
(61 S. E. (2d) 654)

74

*Messrs. Samuel Want, Sam Rogol and Leroy M. Want,* of Darlington, and *J. W. Wallace,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Respondents,*

October 26, 1950.

Taylor, Justice.

This appeal comes to this Court from an order of the Resident Judge of the Twelfth Judicial Circuit, dated February 9, 1950, affirming an opinion and award of the South Carolina Industrial Commission, dated March 7, 1949, wherein claimant was denied compensation for injuries sustained by him which were alleged to have arisen out of and in the course of his employment.

From this order, exceptions were taken which present the question of whether or not the injuries received by appellant were the result of an accident which arose out of and in the course of his employment, appellant contending that

under the facts, as found by the Industrial Commission, claimant is entitled to compensation as a matter of law.

The testimony reveals that three persons were employed by respondent in its paint and body repair shop at the time in question and for several months prior thereto. The foreman having been discharged some time prior to the accident, an arrangement had been entered into whereby the three employees were to work together, with Mr. W. O. Turner being in charge of repair orders and parceling out the work equally so that one would not be called upon to do more than his share of the work. This arrangement was to be in force unless the manager should call upon one of the employees to do some specific job.

A Florence, South Carolina, Police car was brought in some two or three days prior to the accident and turned over to Mr. Turner by Mr. Smith, the Manager, with instructions to weld the holes in the body where the radio aerial had been previously installed and had at that time been removed, and to have the police signs removed from the doors. Turner assigned this work to one of the employees named B. G. Game, who was engaged in this operation at the time claimant was injured.

On June 3, 1948, the day in question, claimant, having no work assigned to him by his employer, had been idle all day and at about 4 p. m. was sitting in the front seat of the car on which Game was working, when he took from the glove compartment a tear gas bomb. Not knowing what the object was, he pulled the cotter pin, thereby releasing the contents of the bomb, which he then threw to the floor where it exploded, as a result of which the tear gas injured claimant's eyes and impaired his sight.

The Hearing Commissioner found that "Jordan was undoubtedly on the job at the time of the accident in the sense that it was during his work hours and at a time his employer could command his services, but a careful and painstaking consideration of the entire record convinces me that

he had no duties to perform in or about the Chevrolet Police car at the time of the injury, and that his handling of the tear gas bomb was merely to pass the time and his pulling of the cotter pin thereof was in pursuit of natural curiosity which resulted so unfortunately to himself."

The case therefore falls within that class of cases where one, while awaiting a work assignment during working hours at his place of employment in idle curiosity tampers with a strange object which is present by reason of the nature of the employer's business, is injured, bearing in mind that negligence and contributory negligence are of no consequence in Workmen's Compensation cases. *Allsep v. Daniel Construction Co.,* 216 S. C. 268, 57 S. E. (2d) 427.

An injury may be regarded as arising out of the employment if it resulted from a risk or danger to which the workman was exposed by reason of being engaged in the performance of his duties although such risk or danger was not inherent in and not necessarily essential to the activities of the employment. 58 Am. Jur. 720, Sec. 211.

Upon admitted or established facts the question of whether an accident is compensable is a question of law and this is not an invasion of the fact-finding field of the Commission on the part of the Court. In the instant case, however, the findings of fact are accepted. *Marley v. Orval P. Johnson Co.,* 215 Iowa 151, 244 N. W. 833, 85 A. L. R. 969; *Bethlehem Steel Co. v. Parker, D. C.,* 64 F. Supp. 615.

It is obvious in the instant case that without the employment the injury would not have occurred, as it arose from a danger which was part of the work environment and not common to the neighborhood. *Eargle v. South Carolina Electric & Gas Co.,* 205 S. C. 423, 32 S. E. (2d) 240.

This being the first "curiosity" case to come before this Court, we have looked to other jurisdictions for guidance and quote quite extensively therefrom.

The case of *Bernier v. Greenville Mills,* 1944, 93 N. H. 165, 37 A. 2d 5, was a typical curiosity case. Claimant went upstairs to obtain a tool. En route he saw a shearing machine which excited his curiosity. He touched the moving cloth in the machine to see how it felt. His hand was drawn in by the suction and injured. He had not been warned of the danger or forbidden to touch the cloth. Award was affirmed upon the ground that the employment was casual at least in part of the injury which was incidental and not the result of willful misconduct.

In *Derby v. International Salt Co.,* 233 App. Div. 15, 251 N. Y. S. 531, "The claimant was engaged in moving salt in a hand cart. He placed the cart in position where it would be filled from a chute and while waiting for this he exercised by walking about, as the weather was cold. He received serious injuries to each hand from the explosion of a dynamite cartridge or cap. He describes the happening: 'I saw something across a long board that was laying there. It was shining. It was in a little box and I picked it up and looked at it and in the left hand I held it and * * * I pulled that wire and it exploded.' The claimant had not abandoned his employment. It was his duty to wait until the cart was filled, and observing the interesting looking box or device he picked it up to investigate. Except for the dangerous character of his find, this act would not have lessened the amount of labor which he would do. It was a peril arising because of his employment at the salt works. The principle does not differ from *Miles v. Gibbs & Hill, Inc.,* 250 N. Y. 590, 166 N. E. 335, where an employee walking along a railroad track struck, with a long-handled hammer which he was carrying, a small object on the rail which proved to be a torpedo."

In *Pedersen v. Nelson,* 1944, 267 App. Div. 843, 45 N. Y. S. (2d) 784, claimant was a handyman, janitor and carpenter. In a house under his employer's orders, he saw and lighted a firecracker and was injured. Award was affirmed under the authority of *Miles v. Gibbs & Hill, Inc.,* 250 N.

Y. 590, 166 N. E. 335. Another case from New York is *Franck v. Allen,* 270 App. Div. 960, 61 N. Y. S. (2d) 728, where an employee found on the floor of employer's cow barn an object which proved to be a dynamite cap. He struck the shell to remove the powder, which failed. He then picked up a nail from a window sill, inserted it in the cap, resulting in an explosion which injured him. Award was affirmed upon the authority of the foregoing and other cited New York decisions.

Frequently quoted in our decisions and by other courts has been the early (1913) Massachusetts McNicol's case, cited as *Re Employers' Liability Assurance Corporation,* 215 Mass. 497, 102 N. E. 697, L. R. A. 1916-A, 306, wherein Chief Justice Rugg undertook to define the troublesome phrase, "arising out of" 6 Schneider 18 discusses the subsequent development and broadening of the view and states: "But the more adaptable rule is that an injury may be said to arise out of the employment when it arises out of the nature, condition, obligation or incident of the employment, and it is enough if there be a causal connection between the injury and the business, a connection substantially contributory though it need not be the sole or proximate cause." The author further remarks that the Massachusetts court, which decided *McNicol, supra,* years before, recognized and gave effect to the more modern and liberal view in 1940 in Caswell's Case, 305 Mass. 500, 26 N. E. (2d) 328, 330, and said: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects."

Comment upon Caswell's case is found in 3 NACCA Law Journal 39, as follows: "This case is a landmark in Massachusetts law as it avoided the paralyzing effect of the earlier decision in McNicol's case requiring 'peculiar' exposure, and deinial of compensation for common risks." That author further says on the same page: "Under such a broad definition, as well as under narrower rules, it is not

necessary that the injury be one which ought to have been foreseen or expected. Even unusual or extraordinary consequences of the employment may well be compensable. The risk insured is not only the foreseeable one, but the risk which, after the event, can be seen to have its origin in the nature, conditions, obligations, or incidents of the employment."

"A slight deviation, caused by curiosity or other natural human act, is not necessarily a bar to compensation. Although the older cases used the strict common-law theories to bar even compensation claims, the modern theory is to permit an award where an instrumentality of the employer, or a risk incidental to the employment, in fact combined with the act of curiosity or other reasonably natural acts, and produced the injury. Furthermore, the defense of 'deviation' or 'curiosity' is borrowed from the common law, and workmen's compensation meant to discard narrow common-law theories. The defense, therefore, should rarely be upheld and must be limited to acts so foreign to the employment (used in its widest sense) as not to 'arise out of' even a reasonable incident thereof." 4 NACCA Law Journal 23.

The footnote citations supporting the foregoing are here reproduced as a matter of convenience to those interested in this subject: "See excellent discussion by Chestnut, J., in *Bethleheim Steel Co. v. Parker,* 64 F. Supp. 615 (D. C. Md. 1946), refusing to follow an early Massachusetts case—Maronofsky's Case, 234 Mass. 343, 125 N. E. 565 (1920). See also an outstanding discussion of slight deviations by McFaddin, J., in *Tinsman Mfg. Co. v. Sparks,* 211 Ark. 554, 201 S. W. (2d) 573 (1947), refusing to follow early cases in Mass. and Indiana, as they were against the modern trend (buying smoking tobacco is natural act). *Franck v. Allen,* 270 App. Div. 960, 61 N. Y. S. (2d) 728 (1946), found dynamite cap sweeping floor, picked up nail and prodded, cap exploded—arose out of. *Bernier v. Greenville Mills,* 93 N. H. 165, 37 A. (2d) 5 (1944)—put hand in fellow-employee's machine out of curiosity—not a bar to

compensation. Excellent discussion by Page, J., *Derby v. International Salt Co.,* 233 App. Div. 15, 251 N. Y. S. 531 (1931)—out of curiosity picked up little box on floor (dynamite cartridge). *Reynolds v. Oswego Falls Corp.,* 264 App. Div. 965, 37 N. Y. S. (2d) 167—weighing self on scale of corporation."

*Simon v. Standard Oil Co.,* 150 Neb. 799, 36 N. W. (2d) 102, involved facts hardly comparable with those of the case in hand—claimant left the immediate premises of his employment after he had finished his work, whereby it is distinguished. *Bethlehem Steel Co. v. Parker,* D. C., 64 F. Supp. 615, 616, opinion by Judge Chesnut of the Maryland District Court, is the most recent (1946) and enlightening decision in point. It involved the Federal Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. Sec. 901 *et seq.,* which, however, is identical with the requirement of our Compensation Act that a compensable accident must be one which arises out of and in the course of employment. The Federal Act contains certain statutory presumptions which ours does not but those provisions were not relied upon in the cited decision and do not afford any distinction here. In that case claimant was a young woman employed on the deck of a vessel which was undergoing repairs. Permissibly she went to a lower deck to get a drink of water and on her return she noticed an opening in a wall which turned out to be the open panel of a dumb waiter shaft. Impelled by curiosity and in ignorance (which is the csae in hand), she placed her head in the shaft to look upward when the dumb waiter descended, struck her head and injured her. Just as claimant here, she did not violate any specific work or safety rule and had no intention to injure herself. The Hearing Commissioner awarded compensation and said of claimant's conduct, quoting, "that her impulsive reaction to the situation placed before her by the conditions under which the work was performed, while constituting conduct immediately irrelevant to the job, was not sufficient to break the nexus between workman and employer; that

under all of the circumstances, it is found that the accident arose out of and in the course of employment."

The reasoning of the Court in affirming the award and the valuable review of the leading authorities can best be partially presented by the following excerpts from the opinion:

"The question of law whether liability exists in this case is, I think, a close one, The answer to it depends largely on the underlying philosophy as to the purpose and scope of the Longshoremen's Act. In general it follows the pattern of State Workmen's Compensation Acts .but more particularly its phraseology was taken from the New York Act * * *. It frequently has been judicially said that the Act is to be liberally construed in favor of the injured employee or his dependent family. * * *

"The precise legal question presented is whether the employee's injuries arose 'out of and in the course of employment'. There is no difficulty in finding that the injury arose 'in the course of employment'; but the question is whether it arose 'out of' her employment. As I have indicated, the proper application of this phrase in the statute to the facts of this case depends very largely upon the judicial concept of the purpose and scope of the statute as a whole. These compensation statutes constitute a substituted remedy for those which an injured employee had at common law, based primarily on negligence of the employer and subject to be defeated by contributory negligence of the employee, and the very well-known defenses of the fellow servant doctrine and the assumption of risk. This fundamental conception of liability was changed by the statute which expressly provides that 'compensation shall be payable irrespective of fault as a cause for the injury'. Section 904(b).

"The purpose of the statute was well expressed by Judge Parker for this Circuit in the comparatively recent case of *Wheeling Corrugating Co. v. McManigal, supra* [4 Cir.],41 F. (2d) [593] at page 595: 'Its purpose is to extend to the

workers upon navigable waters of the United States, who cannot be reached by state legislation, the benefits of a compulsory system of compensation for disability or death resulting from injuries received in the course of their employment. This system of compensation is based, not upon ancient fictions of the law, but upon the principles of industrial insurance in application of the theory that industrial accidents, whether due to the negligence of the worker or not, are a hazard of the business; and that they should be borne, not by the individual worker, but by the industry in which he is engaged.'

"The phrase 'out of' and 'in the course of' employment was familiar in the common law relation of master and servant, possibly more frequently expressed as 'scope of employment'. See 39 C. J. 278. It is, therefore, perhaps not surprising that in the earlier cases dealing with a similar phraseology in compensation statutes, the courts leaned very heavily upon the application which had been judicially previously given to the phrase in the common law cases. But the trend of judicial opinion in recent years has been very distinctly away from this earlier conception of the scope and purpose of Compensation Acts. * * * In applying the phrase 'out of' employment, the later cases emphasize the importance of the working and environmental conditions. In many cases the injuries are held compensable where the precise cause of the accident is incidental thereto although not strictly relevant to the performance of any duty by the employee. * * *

"In the instant case it is clear enough that the immediate cause of the employee's injury was due to her action in looking up the dumb waiter shaft; and that in doing so she was not performing any duty that was required by her or even relevant to her employment as a 'burner' on the upper deck of the ship. It would follow, therefore, if one follows the lines of the earlier cases with their narrow and technical construction of the phrase 'out of', the particular injury

would not be compensable. But it is also clear on the facts that her action was not in any sense a striking or intentional departure from her duties but at most a slight and casual one occasioned apparently by not unnatural curiosity on her part to see something which attracted her in her unusual environment arising in the course of her general duty to return to her work on the upper deck. The facts found by the Deputy Commissioner exclude any knowledge or even suspicion on her part that her casual action was or would be accompanied by any likelihood of danger to herself or to any one else. It is clear, therefore, she was not within the special exception in the statute which has been above quoted.

"The point against liability most strongly urged by counsel for the employer is that the injury was directly attributable merely to 'curiosity' on the part of the employee. His brief reviews a number of decisions to the effect that injuries resulting from mere curiosity on the part of the employee are noncompensable. Typical of such cases are *Saucier's case,* 122 Me. 325, 119 A. 860; *Peterman v. Industrial Comm.,* 228 Wis. 352, 280 N. W. 379; *Maronofsky's case,* 234 Mass. 343, 125 N. E. 565; *Cennell v. Oscar Daniels Co.,* 203 Mich. 73, 168 N. W. 1009, 7 A. L. R. 1301 and Annotation p. 1305. But an examination of these and other cases of the same nature will show that for the most part they were decided many years ago when the courts were still under the influence of the narrow and technical construction of the scope of the Compensation Acts; and in a number of cases at least the actions of the injured employees, motivated by curiosity, related to conditions which were or should have been known to the employee to be definitely dangerous. Curiosity itself as the cause of the action leading to the injury is only one element in the problem of determining whether the particular act was within or without the scope of the employment. Thus, it was well said by the court in *Bernier v. Greenville Mills, Inc.,* 93 N. H. 165, 37 A. (2d) 5, 6 (a curiosity case), 'The expectability of the exercise of mere curiosity is not the sole test of whether there was a de-

parture from the course of employment and whether the employment was in any part causal of the plaintiff's injuries.'

"In this latter case the award of compensation was sustained despite the fact that the employe's accidental injury was caused by his doing something from mere curiosity. And *Derby v. International Salt Co., Inc.,* 233 App. Div. 15, 251 N. Y. S. 531, is to the same effect.

"It is unnecessary to attempt a meticulous review of the hundreds of cases in the federal and state courts under these numerous compensation statutes. It is sufficient to say that hardly any two cases are precisely alike on the facts and there is no certain and uniform rule to be deduced from the many decisions of many courts dealing with the subject. Circuit Judge Rutledge (now Mr. Justice Rutledge of the Supreme Court) has been at pains to classify many of these cases in *Hartford Accident & Indemnity Co. v. Cardillo, supra* [72 App. D. C. 52, 112 F. (2d) 11]. The philosophy of the decision in that case is, I think, in accord with the modern tendency of the decisions upon the subject. He said in generalizing about the scope and purpose of the act (112 F. (2d) at page 17) : 'The provision is : "No compensation shall be payable if the injury was occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another." This provision, reinforced by the statutory presumptions and the Act's fundamental policy in departing from fault as the basis of liability and of defense, except as specified, is inconsistent with any notion that recovery is barred by misconduct which amounts to no more than temporary lapse from duty, conduct immediately irrelevant to the job, contributory negligence, fault, illegality, etc., unless it amounts to the kind and degree of misconduct prescribed in definite terms by the Act. It is entirely inconsistent with reading into the statute the law of tort causation and defense, where liability is predicated on fault and nullified by contributory fault. We are committed by the statutes and our previous de-

cisions against the test of immediate relevancy of the precipitating act to the task in hand.'

"With this understanding of the purpose and scope of the statute, I conclude that the facts of the case make the employee's injuries compensable. Even treating the case as a doubtful one, that doubt should be resolved in favor of the employee. It is true that to be within the coverage of the Act it must be found that her injuries arose 'out of' her employment; but it is not necessary that her immediate action which precipitated her injury should have been directly relevant to her general work. Her action in looking into the dumb waiter shaft was doubtless a thoughtless and casual one but not accompanied by any sense of danger to herself, and clearly not a willful act to inflict injury upon herself or another. Although apparently prompted by curiosity. I think it may be properly classified as an action which was occasioned by and incidental to her environment."

The Circuit Judge, feeling that he was bound by the findings of the fact-finding body, which is well-established law, affirmed the findings of the Industrial Commission, but we are of the opinion that, under the facts as heretofore determined, the claimant is entitled to compensation as a matter of law and that the order appealed from should be reversed, the case remanded to the Circuit Court with instructions that it be remanded to the Industrial Commission for the purpose of making an award commensurate with claimant's injuries, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.