GEIBIG v. ANN ARBOR ASPHALT CONSTRUCTION CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—ACCIDENT ARISING OUT OF AND IN COURSE OF EMPLOYMENT.

> A finding by the department of labor and industry that a workman engaged in clearing the way for widening a street, who arrived at the place of employment about 25 minutes before time for work to begin, and who, soon after arriving and before work began, was struck and killed by an interurban car as he was returning from across the street with an armful of wood with which to replenish a fire built by the employees, with the tacit approval of the employer, for the purpose of warming themselves, was killed by an accident which arose out of and in the course of his employment, within the meaning of the workmen's compensation act, *held*, supported by the evidence. BIRD and WIEST, JJ., dissenting.

Certiorari to Department of Labor and Industry. Submitted January 12, 1927. (Docket No. 83.) Decided June 6, 1927. Rehearing denied October 3, 1927.

Louise Geibig, guardian, and another presented a claim for compensation against the Ann Arbor Asphalt Construction Company for the accidental death of Rudolph Redmer in defendant's employ. From an order awarding compensation, defendant and the Southern Surety Company, insurer, bring certiorari. Affirmed.

*Coulter, Bogle & Hampton,* for appellants.

*C. W. Videan* and *Routier, Nichols & Fildew,* for appellees.

FELLOWS, J. Rudolph Redmer, for the benefit of whose minor children this proceeding was instituted,

Workmen's Compensation Acts, C. J. § 114; L. R. A. 1916A, 331; L. R. A. 1917D, 119; L. R. A. 1918F, 907; 38 A. L. R. 1041; 48 A. L. R. 1400; 28 R. C. L. 804; 4 R. C. L. Supp. 1857; 5 R. C. L. Supp. 1570; 6 R. C. L. Supp. 1756.

worked for defendant construction company in the month of November, 1924. The construction company was engaged in clearing the way for the so-called "wider Woodward" project. The work progressed and on November 20th was being performed north of Birmingham near the Quarton road. Work commenced at 7 in the morning. Redmer lived at Ferndale, some five or six miles away. On November 20th he came to the place of his employment by bus, reaching there about 25 minutes before 7. There is some testimony from which it could be inferred that the transportation facilities were such as to necessitate taking the bus he did in order to be there on time. He was preceded by two other workmen. No shelter from the elements had been provided for the workmen as the work progressed daily from point to point, but the weather was chilly and a custom had been practiced by the employees of building a fire each morning before working time, rebuilding it at noon time, and keeping it up if required during the hours of labor. This was not expressly ordered by the foreman, but was done with his knowledge, and he warmed himself by it as did the workmen, both during the hours of rest and of labor, and at one point in his testimony the foreman testified that he took charge of the fire that was built, although the general tendency of his testimony was that the workmen built and looked after the fires. In the main, the trees in the line of the improvement were moved off the right of way, but one small dead maple was used for the fires. Where one of the trees had been dug out a hole about 10 feet across was left. This afforded a place for a fire and shelter from the wind. It was located at a point where the work was going on at this time. When Redmer reached the place of his employment he found that his fellow workmen had started the fire. He left his dinner pail at the side

of the hole and went to the other side of Woodward avenue after more wood; returning with an armful, he was struck by an interurban car, thrown upon the pavement, and, the testimony fairly discloses, was there run over by an automobile.   He was dead when his fellow workmen reached him.

Defendants invoke the general rule, recognized in this State and other jurisdictions, that where the accident occurs before the hour of labor has arrived, or after the day's work is over, or occurs off the premises of the employer, and in coming to or going from the place of employment, it may not be said that the accident arose out of and in the course of the employment.    But it was pointed out in the leading case of *Hills* v. *Blair*, 182 Mich. 20, that this rule is not of universal application, and it was there said:

"In applying the general rule that the period of going to and returning from work is not covered by the act, it is held that the employment is not limited by the exact time when the workman reaches the scene of his labor and begins it, nor when he ceases, but includes a reasonable time, space, and opportunity before and after, while he is at or near his place of employment.   One of the tests sometimes applied is whether the workman is still on the premises of his employer.   This, while often a helpful consideration, is by no means conclusive.   A workman might be on the premises of another than his employer, or in a public place, and yet be so close to the scene of his labor, within its zone, environments, and hazards, as to be in effect at the place and under the protection of the act, while, on the other hand, as in case of a railway stretching endless miles across the country, he might be on the premises of his employer and yet far removed from where his contract of labor called him.    The protection of the law does not extend, except by special contract, beyond the locality, or vicinity, of the place of labor."

Redmer had arrived at the place of his employment; he did not arrive at an unreasonable hour; the build-

ing and keeping a fire going was manifestly beneficial to both the employee and employer; the custom had at least the tacit approval of the employer; wood was needed, had not been provided by the employer but was to be had in the immediate vicinity on the other side of the pavement, which was then 16 feet wide; the testimony justifies the conclusion that decedent met his death less than two rods from the fire, and sticks of wood were found scattered around the place where he was struck.   Deceased was performing a service for the master as well as for himself and his fellow workmen, and was performing it in the immediate vicinity of his place of labor.   While the case must be recognized as a border line case, we do not think it can be said that the finding of the department that the accident arose out of and in the course of decedent's employment was without evidential support.   See *Stockley* v. *School District,* 231 Mich. 523; *Punches* v. *American Box Board Co.,* 216 Mich. 342; *Sebo* v. *Libby, McNeil & Libby,* 216 Mich. 351; *Meyers* v. *Railroad Co.,* 199 Mich. 135; *Porritt* v. *Railway,* 199 Mich. 200; *Clifton* v. *Kroger Grocery & Baking Co.,* 217 Mich. 462; *Beaudry* v. *Watkins,* 191 Mich. 445 (L. R. A. 1916F, 576) ; *Haller* v. *City of Lansing,* 195 Mich. 753 (L. R. A. 1917E, 324) ; *Malone* v. *Railway,* 202 Mich. 136; *Walbert* v. *Trexler,* 156 Pa. 112 (27 Atl. 65).   In the last cited case it was said:

"While the appellants' contention that the employer's liability does not begin until the employee's service has actually begun, is in general entirely sound, yet the rule cannot be held absolutely to the stroke of the clock.   The deceased lived a mile away from the works.   In strict law he was bound to be there when the whistle blew, and he was entitled to a reasonable margin in arriving so as not to be late.   There was testimony that he was in the habit of using his time under such circumstances in oiling and getting ready

the machine on which he worked.  Whether this was work with which he might occupy his employer's time does not appear, but even if it was, the coming a little early and getting to work a short time before he was actually required to, is not usually regarded as a fault in a workman which should deprive him of compensation when injured."

While we shall not take up and distinguish all the cases cited by defendants' counsel, and they have furnished us an exhaustive and able brief, it should be noted that in the case most strenuously relied upon by them (*Ballman* v. *D'Arcy Spring Co.*, 221 Mich. 582), the workman had left the master's premises in violation of the express order of the master.

The award will stand affirmed.

SHARPE, C. J., and SNOW, STEERE, CLARK, and MCDONALD, JJ., concurred with FELLOWS, J.

WIEST, J. (*dissenting*).    I do not accept the views expressed in the opinion of Mr. Justice FELLOWS. The workmen's compensation act should receive liberal construction, but its provisions are not sufficiently elastic to make the employer pay for the accident involved in this case.    Case authority, direct or analogous, is wanting, probably because of the pioneer character of the proposed holding.    It seems to me that such holding will open up a new subject of liability of surprising possibilities, except the case be isolated by the familiar method of distinguishing it from its kind.

There was no causal connection between the injury and the employment.    The peril of crossing the street to obtain firewood was not a hazard inhering in the employment.    The time not having arrived for going to work, the deceased volunteered to go for firewood, a kindly, personal act toward his fellows, within his own volition and in no way connected with his em-

ployment.   It will not do to connect his personal enjoyment and good-fellowship with his employment by the tenuous consideration that the practice of the workmen was to build fires, without interference by the employer, and to predicate a finding thereon that he was in the course of his employment.

In *Griffith* v. *Cole Bros.*, 183 Iowa, 415, 430 (165 N. W. 577), the court quoted, with approval, the following graphic statement of the law from *Craske* v. *Wigan,* 2 B. W. C. C. 35:

" 'It is not enough for the applicant to say "the accident would not have happened if I had not been engaged in this employment, or if I had not been in that particular place." The applicant must go further, and must say, "The accident arose because of something I was doing in the course of my employment, and because I was exposed by the nature of my employment to some peculiar danger." ' "

I understand the employer is not liable for an injury to a workman unless the injury received is a result of a hazard which accompanies duties.   *Buvia* v. *Oscar Daniels Co.*, 203 Mich. 73 (7 A. L. R. 1301).

The award should be set aside.

BIRD, J., concurred with WIEST, J.