16446

McCOY v. EASLEY COTTON MILLS

(62 S. E. (2d) 772)

*Messrs. Haynsworth & Haynsworth,* of Greenville, *for Appellant,*

*Messrs. John Bolt Culbertson* and *Richard J. Foster,* of Greenville, *for Respondent,*

December 15, 1950.

OXNER, Justice.

This is a case under the Workmen's Compensation Act, Code 1942, § 7035-1 *et seq.* Claimant, Broadus McCoy, was employed at the Easley plant of the Woodside Mills, a self-

insurer. About 6:30 P. M. on April 7, 1949, while smoking in the yard of the mill, he was unintentionally struck in the left eye with a copper tube by a fellow employee. He lost the sight of this eye, which was later removed and an artificial eye inserted.

A claim for compensation was denied by the hearing Commissioner upon the ground that the accident did not arise out of and in the course of claimant's employment. On appeal to the full Commission, the findings of the hearing Commissioner were reversed and an award made to claimant for the loss of his left eye and for serious facial disfigurement. The Circuit Court affirmed the award of the full Commission. The employer has appealed.

There are several questions raised by the exceptions. We shall first determine whether there is any evidence reasonably warranting the conclusion that the claimant's injury arose out of and in the course of his employment. There is a serious dispute as to some of the material facts but the testimony, viewed in the light most favorable to the claimant, sustains the following statement found in the order of the Court below:

"The claimant was at the time of his injury employed by the defendant as a combination doffer and oiler on the second shift. He suffered an accidental injury to his left eye resulting in the removal of the eye. On the date in question, the claimant and other employees were just outside of the defendant's plant for the purpose of smoking. The injury occurred during an interval in the work, permitted by the employer so that the employees could smoke. They were paid for the time so engaged. The injury occurred on the premises of the employer.

"Among the employees taking time out to smoke was the claimant and one Roy Holder. It was generally known that the said Roy Holder was 'goosey' meaning ticklish. As the claimant came out of the plant to smoke and passed Holder, claimant 'goosed', or punched him. After this, claimant and

Holder began a discussion about some copper piping found on the premises and the adaptability of the pipe to use in making a travis key used by them in their work. After this discussion, claimant walked away from Holder and was standing with his back to him. Holder was holding in his hands a piece of the copper pipe, referred to as being in lengths from ten to twelve feet. As the claimant was standing with his back to Holder, someone (unidentified in the record—but neither claimant or Holder) said "look out'. When the call to 'look out' was made, claimant turned quickly, striking the piece of copper pipe held by Holder, inflicting the injury which resulted in the removal of claimant's eye.

"From the record, it is fairly deducible that approximately five minutes elapsed between the 'goosing', or punching, of the said Holder by claimant and the injury. There was no continuation of the horseplay. The men immediately involved were not playing at the time of the injury and were not then engaged in horseplay. They were not mad and no assault is involved. The call to 'look out' was not made by the claimant or Holder but the reaction of the claimant in turning quickly into the pipe held by Holder was in response to the call so made by some other employee."

The "copper piping" mentioned in the foregoing statement consisted of copper tubing about a quarter of an inch in diameter and ten or twelve feet in length. These tubes, which were being used in air conditioning the plant, had been left in a box just outside the door of the mill by a construction company.

We think it is clear that the accident occurred "in the course of" claimant's employment. While smoking was not, of course, one of the obligatory duties of his employment, yet it was something permitted by the employer. Consequently, no break in claimant's employment resulted from the fact that he temporarily left his job and walked outside

the building to smoke. *Mack v. Branch No. 12, Post Exchange, Fort Jackson,* 207 S. C. 258, 35 S. E. (2d) 638.

Did the accident arise "out of" claimant's employment? The hearing Commissioner concluded that claimant sustained his injury through horseplay initiated by him, and that under the recent case of *Allsep v. Daniel Construction Co.,* 216 S. C. 268, 57 S. E. (2d) 427, he was not entitled to compensation. It was held in that case that compensation may be awarded for injuries sustained through horseplay which was not participated in by the injured employee, but the question of whether an aggressor could recover compensation was not determined. It is not necessary on this appeal to enter into a discussion of the distinction alluded to in the *Allsep case* for a majority of the Commission concluded that claimant's initial act of horseplay was entirely disassociated from his subsequent accident and injury. It is true that claimant engaged in horseplay about the time Holder came out of the mill and while there is some testimony reasonably warranting the inference that he had resumed this diversion just before being injured, there is abundant testimony to the effect that he was not engaged therein at the time of his injury and had not been for approximately five minutes prior thereto.

Appellant further contends that even though horseplay had no part in the accident, claimant's injury did not have its origin in a risk connected with his employment but arose from circumstances wholly disconnected therewith. It seems to be undisputed that just prior to the accident there was some discussion with reference to the possible use of this copper tubing in making travis keys used by doffers. Appellant says that this discussion was not in furtherance of its business because doffers had nothing to do with the making of travis keys and were allowed to use only those made by the second hands. But we do not regard this fact as having any material bearing on the question. It seems to be well settled that an employee,

in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the time of injury; it is enough if he is upon his employer's premises, occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment. *Jordan v. Dixie Chevrolet,* S. C., 61 S. E. (2d) 654, and cases therein cited. There was testimony tending to show that just before the accident Holder was examining a piece of the copper tubing and considering its use in making a travis key. While doing so, someone, other than Holder or the claimant, yelled "look out" and thereupon claimant turned and was accidentally struck in the eye by the copper tube held by Holder. No assault was involved. It is not contended that Holder had any intention to injure claimant. We think there is ample testimony warranting the conclusion of a majority of the Commission that claimant's injury arose "out of" his employment.

The next question relates to the manner in which the hearing was had before the full Commission. It appears that only three of the five commissioners were present during the oral arguments. Although in the building, Commissioners Dukes and Hyatt were absent. The failure of Commissioner Hyatt to attend is not explained. Commissioner Dukes states in his affidavit that his absence was "due to a telephone call and official business that detained me in my offices during the time of the oral arguments", but that after the oral arguments he "viewed the claimant in the presence of several witnesses" and "carefully read the record and viewed the exhibits in the case".

Counsel for appellant contend that they were entitled to be heard by all members of the Commission. But we do not think appellant is in a position to make this complaint since no objection to the absence of these two members was interposed at the time of oral argument. The question was first raised on appeal to the Circuit Court. The objection came too late. *Johnson v. T. B. Stewart Con-*

*struction Co.,* 37 Ariz. 250, 293 P. 20, 21; *State ex rel. Randall v. Shain,* 341 Mo. 201, 108 S. W. (2d) 122. It should have been made at the hearing before the full Commission and by failing to do so, appellant waived the right now asserted. The fact that there was no stenographer present at the hearing before the full Commission did not, as counsel for appellant seem to think, preclude them from making timely objection.

In view of the foregoing conclusion, we need not determine whether it is mandatory for all members to be present when an appeal is heard before the full Commission. We leave that question open, as well as the question of the number necessary to constitute a quorum for the transaction of business. We take this opportunity of saying, however, that we certainly do not condone the procedure followed at the hearing of this case before the full Commission. No good reason is shown for the absence of two Commissioners. Ordinarily oral argument is of much aid to any judicial or quasi-judicial body in reaching a proper conclusion. Only circumstances of the most urgent nature are sufficient to excuse a member's absence.

The next assignment of error is "that the record did not contain a description of the disfigurement but that such description appeared for the first time in the award as written by the full Commission." It is said that the procedure followed in this case does not conform to the requirements set forth by us in *Parrott v. Barfield Used Parts,* 206 S. C. 381, 34 S. E. (2d) 802, *Shillinglaw v. Springs Cotton Mills,* 209 S. C. 379, 40 S. E. (2d) 502 and *Polk v. Brooklyn Cooperage Co.,* 209 S. C. 386, 40 S. E. (2d) 505.

The hearing Commissioner observed claimant and stated in the record: "It is definitely the opinion of this Commissioner that the claimant's left eye is artifical. It is somewhat farther back in the head than his natural right eye. Apparently, he has an excellent job in the fiting of the artificial eye." The following appears in the opinion of the full Com-

mission: "The claimant appeared and was observed by the members of the full Commission, and it was easily apparent at a distance of eight feet or farther away that the claimant has an artificial left eye and, further, that the outside of the eye socket is greater or more depressed than the right eye socket. This was ugly and somewhat repulsive." Claimant was also observed by the Circuit Judge when he heard the appeal from the award of the full Commission. He stated in his order: "The claimant, when viewed by me, was wearing an artificial eye. It was noticeable for some distance. At different angles the artificial eye is more noticeable. It lacks the movement of a natural eye and is lifeless in appearance. It lacks response to varying degrees of light and consequently the light affects the degree of similarity with the other eye. The eye worn by claimant is a fairly good match for the other eye but it still appears, as it is, artificial."

We said in *Shillinglaw v. Springs Cotton Mills,* ▮ *supra:* "The record should contain such a statement of the condition and appearance of the claimant as would enable a reviewing court to determine the propriety of a disfigurement award." [209 S. C. 379, 40 S. E. (2d) 504.] We think in the instant case there has been a substantial compliance with this requirement. Moreover, it is difficult to perceive how appellant has been prejudiced by the procedure followed. It must be kept in mind that the existence of a disfigurement cannot be seriously questioned. It could be observed by any layman without the aid of medical experts. In concluding our discussion of this phase of the case, we desire to add that the two Commissioners who were absent should have observed claimant in the presence of counsel but their failure to do so, under the circumstances of this case, was not prejudicial.

Finally, it is claimed that the sum of $1,500.00 ▮ awarded for disfigurement is excessive. This was a matter addressed to the sound discretion of the Commission. No abuse of such discretion is shown.

All exceptions are overruled and the order appealed from is affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., concur.

BAKER, C. J., not participating.