Dalsy PORTEE *et al.*, Respondents, v. SOUTH CAROLINA STATE
HOSPITAL *et al.*, Appellants

(106 S. E. (2d) 670)

*Messrs. T. C. Callison, Attorney General,* and *Julian L.
Johnson, Assistant Attorney General,* of Columbia, *for Ap-
pellants,*

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, *for Respondents,*

January 14, 1959.

OXNER, Justice.

This is an appeal from an order of the Circuit Court affirming an award by the Industrial Commission to the widow

and minor children of Grover Portee who died on October 16, 1957. The questions presented are (1) Have the claimants shown that the deceased suffered an injury by accident? (2) If so, did such injury arise out of and in the course of his employment?

The deceased, Grover Portee, a Negro about 32 years of age and apparently in good physical condition, was employed as a male attendant or orderly in the Negro Division of the South Carolina State Hospital. He and his wife, who was employed in another ward at this institution, reported for work at seven o'clock on the morning of October 16, 1957. He was suffering from a sore throat. About 8:40 that morning he escorted a patient to the ophthalmologist and left him with the attendant in that office. He then went to the office of Margie Bradley, a technician at the hospital, and requested medication for his sore throat. As she had done on several other occasions when deceased had a similar ailment, she gave him a shot of penicillin. The needle jammed and she was unable to complete the injection. Shortly thereafter the deceased was seized with tremors and commenced frothing at the mouth. A physician at the hospital was immediately summoned. The deceased was found in a critical condition. Two other physicians were called. They attempted to revive him with stimulants and artificial respiration. He died at 9:30 that morning, or within an hour after he received the shot of penicillin. It is conceded that death was due to "acute anaphylactic shock caused by procaine penicillin."

Margie Bradley, a Negress in her late twenties, had been employed at the State Hospital for about four years. After graduating from high school she went to college for a period of three years, and had attended 52 classes in medical training at the hospital. There were no registered nurses in her ward. Her work was varied and included giving medicine to the patients. She usually gave the injections of penicillin. She had access to this drug and to the needles. She testified that she was not permitted to give penicillin to the patients except when directed to do so by one of the physicians but without

such authorization she had from time to time given this drug to persons who were not patients. The Industrial Commission found, to which there has been no exception: "From the evidence and exhibits it can be deduced that it was common practice at this State Hospital for the employees to administer medications to each other as the occasions arose."

The Commission concluded that the act of the deceased in taking penicillin was not entirely personal but was for the mutual benefit of himself and his employer. It found: "It was to the employer's advantage that the employee-claimant receive this penicillin shot, as he had done on previous occasions, to ward off any possibility of passing the infection on to the patients at the South Carolina State Hospital."

We have no difficulty in concluding that deceased suffered an injury by accident. *Alewine v. Tobin Quarries, Inc.,* 206 S. C. 103, 33 S. E. (2d) 81; *Whitfield v. Daniel Construction Co.,* 226 S. C. 37, 83 S. E. (2d) 460. It is true that the injection of the penicillin was not an accident. It was expected and intended. But the tragic result was wholly unexpected and unintended, constituting the element of accident. The deceased had suffered no ill effects when given penicillin by Margie Bradley on previous occasions. In *Alewine v. Tobin Quarries, Inc.,* it was held that death resulting from infection of a smallpox vaccination wound was an accidental one.

The question of whether the accident arose out of and in the course of the employment is a more troublesome one. Appellants say that deceased, without the consent or knowledge of his employer, left "his post of duty" and in violation of the rules of the hospital prevailed upon another employee to give him an injection of penicillin solely for his personal comfort and not for any reason connected with his employment.

In *Johnson v. Merchant's Fertilizer Co.,* 198 S. C. 373, 17 S. E. (2d) 695, 697, the following was quoted with approval: "An injury arises 'in the course of employment,' within the meaning of the Workmen's Compensation Act,

when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises 'out of' the employment, when it arises because of it, as when the employment is a contributing proximate cause." In *McCoy v. Easley Cotton Mills,* 218 S. C. 350, 62 S. E. (2d) 772, 774, the Court said: "It seems to be well settled that an employee, in order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the time of injury; it is enough if he is upon his employer's premises, occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment."

In *Mack v. Branch No. 12, Post Exchange,* 207 S. C. 258, 35 S. E. (2d) 838, 840, the following was quoted with approval: "Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment." In *Rewis v. New York Life Insurance Co.,* 226 N. C. 325, 38 S. E. (2d) 97, 99, the Court said: "An employee, while about his employer's business, may do those things which are necessary to his own health and comfort, even though personal to himself, and such acts are regarded as incidental to the employment."

In *Mack v. Branch No. 12, Post Exchange, supra,* 207 S. C. 258, 35 S. E. (2d) 838, and *McCoy v. Easley Cotton*

*Mills, supra,* 218 S. C. 350, 62 S. E. (2d) 772, the use of tobacco was placed in the list of acts for the comfort of an employee while at work and it was accordingly held that smoking is an incident of the employment and there is no break in the employment when an employee temporarily leaves his work to gratify his desire to smoke. In *Mack v. Branch No. 12, Post Exchange, supra,* compensation was allowed where an employee, just before beginning work, while in an anteroom of the main building, spilled some lighter fluid on his trousers which was ignited when he attempted to light a cigarette, resulting in burns on his leg.

We now turn to the cases involving the right to recover compensation where death or injury results from an effort of an employee while at work to obtain relief from illness or discomfort. Compensation has been allowed in some cases and denied in others. 58 Am. Jur., Workmen's Compensation, Section 276; Larson's Workmen's Compensation Law, Volume I, Section 13.21; Annotation 144 A. L. R. 361.

In *Elliott v. Industrial Accident Commission,* 21 Cal. (2d) 281, 131 P. (2d) 521, 522, 144 A. L. R. 358, it was held that the death of an employee arose out of the employment where his death resulted from drinking poison used by his employer as an insect spray which was taken from a bottle labeled "Muscatel Wine" at the suggestion of a fellow employee that a drink of wine might relieve his indisposition or illness, the fellow employee having found the bottle on the employer's premises and put it in his locker supposing it contained wine. In awarding compensaton, the Court said:

"In the instant case the employee was not feeling well, and took what he supposed was wine as a medication for his indisposition. Certainly a reasonable endeavor to treat by simple remedies a physical ailment occurring during an employee's working hours is an incident of the employment under the circumstances here presented. Such an act is clearly for the comfort of the employee and definitely cannot be said to be less in the contemplation of the employer than smoking by the employee. If an employee may satisfy his mere per-

sonal desires such as smoking he may with more reason administer to temporary and minor ailments. The bottle from which he drank was on his employer's premises, and although it does not appear how it came to be there, the substance therein was that used by the employer in its business and kept on its premises in large containers. In the case of *Security Mut. Casualty Co. v. Wakefield,* 5 Cir., 108 F. (2d) 273, an employee in the calf splitting room, suffering from indigestion, went to the adjoining pickling room with a fellow employee to obtain a drink of water. He told the latter he would like to have some soda to relieve the indgestion. Upon reaching the pickling room he observed a barrel painted red with a label reading 'sodium nitrate.' The barrel being filed with a white substance he believed to be baking soda, he took some in water and died therefrom. While it is. true that the employer therein conceded that the indigestion arose out of the employment, the court announced the rule heretofore stated and held that the injury arose out of the employment. Furthermore, that factor is of small consequence. It is not unusual that an employee may, while working, become ill or indisposed from causes having no connection with his employment. And under such circumstances it may be contemplated that the employee will administer common remedies to alleviate his condition. He is doing no more than should be expected of an employee, that is, administering to his normal body wants."

In *Stone-Brady, Inc. v. Heim,* 152 Fla. 710, 12 So. (2d) 888, the employee, a waitress, complained of a "crick" of her neck when she reported for duty. Another employee, in an effort to remove the "crick", snapped the neck of the waitress and jerked her head, and in doing so seriously injured her neck and spinal column. The employer contended that the injury resulted "from the unauthorized acts of a volunteer" for which it was not liable. This contention was denied and it was held that the injury arose out of and in the course of the employment.

It is difficult to reconcile the foregoing cases with certain others in which compensation for injury or death resulting

from self-medication or medication administered by a fellow employee while at work has been denied. Two of the strong-est cases supporting the view of appellants in the instant case are *O'Neil v. Carley Heater Company,* 218 N. Y. 414, 113 N. E. 406, L. R. A. 1917A, 349, and *Saenger v. Locke,* 220 N. Y. 556, 116 N. E. 367, L. R. A. 1918F, 225. In the *O'Neil case* an employee suffering from some form of illness was advised by another worker to take some epsom salts and was informed where a large quantity of this medicine was stored in the factory. He went to the place indicated but by mistake took barium chloride which almost immediately caused his death. The Court held that decedent's illness and his attempt to minister thereto were not ordinary and natural incidents to his employment and denied compensation. In the *Saenger case,* claimant was injured by the mistake of a co-employee in throwing ammonia into her face instead of water to re-vive her from a fainting spell which followed a quarrel with her superior in regard to her work. The Court held that the accident did not arise out of her employment and denied com-pensation.

There is some doubt as to whether the foregoing New York cases would be followed today by the courts of that State. See Larson's Workmen's Compensation Law, Volume 1, Section 13.21. In *Fishman v. S. W. Layton, Inc.,* 284 App. Div. 165, 130 N. Y. S. (2d) 656, 658, leave to appeal denied 307 N. Y. 940, 122 N. E. (2d) 337, an employee became drowsy caused in part by her working conditions. To relieve this drowsiness she was persuaded by some of her co-employees to drink a mixture of coca-cola and benzedrine. She almost immediately suffered a cerebral hemorrhage with coma and paralysis of the left side. The Court held that her injuries arose out of her employment and sustained an award for compensation. In doing so the Court refused to follow *Saenger v. Locke, supra,* stating: "The *Saenger case* was de-cided in 1917, at a time when the Compensation Law was comparatively new and more narrowly construed than is the prevailing judicial view today. Where it has been possible to

do so, without violence to either logic or the language of the statute, there has been an evolutionary process of liberalism in decisions affecting injured workers to meet the beneficent purpose of the Act." Another case indicating a more liberal construction of the New York Act than formerly is *Burns v. Merritt Engineering Co.*, 302 N. Y. 131, 96 N. E. (2d) 739.

This conflict of authority need not be pursued further for we do not undertake to lay down any general rule as to compensability for an employee's injury or death resulting from self-medication or medication by others during hours of employment. Suffice it to say that under the particular facts of the instant case, to which this decision is strictly limited, we think the award made by the Industrial Commission should be sustained.

It would seem clear that the slight deviation by the deceased to obtain medication for his sore throat did not break the chain of employment. Although the further question of whether the occurrence resulting in his death grew out of his employment is a very close one, we think the evidence reasonably warrants an inference that it did. The commission has found that the injection of the penicillin was done not only for the purpose of relieving the personal discomfort of the deceased but "to ward off any possibility of passing the infection on to the patients." The woman who gave the injection was the person who usually performed this duty at the hospital. She had full access to the penicillin and needles. On previous occasions she had given this drug not only to the patients but to others, including the deceased. While she says she was permitted to do so only when directed by one of the physicians, there is no evidence that any such rule was known to the deceased. The following is taken from 99 C. J. S., Workmen's Compensation, § 245, page 870: "The disobedience by fellow workmen of orders is as much one of the risks of a man's employment as a defect in the mechanical appliances."

Finally, it is suggested that deceased should have consulted one of the hospital physicians and not sought medication

from a mere technician, but any error of judgment in this respect would not bar compensation.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.