46 F.3d 1122
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David CARRIER, Jr., Plaintiff-Appellant,
v.
WESTVACO CORPORATION, Defendant-Appellee, and
P. S. Charleston Corporation, d/b/a Pre-Stress Concrete,
Incorporated, Defendant.
 No. 92-2469.
 United States Court of Appeals, Fourth Circuit.
 Argued June 7, 1993.
Decided Jan. 30, 1995.
 
 ARGUED: Andrew Kenneth Epting, Jr., WISE & COLE, P.A., Charleston, SC; George J. Kefalos, Charleston, SC, for Appellant. G. Dana Sinkler, WARREN & SINKLER, Charleston, SC, for Appellee. ON BRIEF: Elizabeth T. Thomas, WARREN & SINKLER, Charleston, SC, for Appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 In this diversity action based on negligence, David Carrier appeals from the district court's order granting summary judgment in favor of Westvaco Corporation (Westvaco). We affirm.
 
 
 2
 Westvaco is a manufacturer of paper and chemicals. Westvaco once operated its own trucking concern to ship its products, but in the late 1980s it began to use contract carriers through brokers and agents. Approximately 30% of its products are now transported by trucks of such contract carriers.
 
 
 3
 On March 31, 1988, National Aluminum Consumer Products Division, a customer of Westvaco, placed an order for thirty-two rolls of paper to be shipped to its plant in Caldwell, Ohio. Westvaco contracted to ship the paper F.O.B. National Aluminum's mill. Willis Wiggins of Westvaco's traffic department arranged the transportation of the shipment through the Ken Carmen Agency, an independent agent for Independent Freight Ways, located in Summerville, South Carolina. Ligon Trucking Company (Ligon) provided drivers for Independent Freight, which it owns. David Carrier, an employee of Ligon, was the driver assigned to this shipment.
 
 
 4
 A bill of lading was prepared reflecting the carrier transporting the shipment (Independent Freight), the trailer and tractor numbers, the shipment week (April 4), and the total freight charge ($764.75), based on a freight rate of $1.98 per 100 pounds. The shipping department for Westvaco also prepared an invoice reflecting a total sales price of $9,062.94, less the freight allowance of $764.48, for a net of $8,298.46. Westvaco includes shipping costs in its pricing of goods by an allowance of a fifty-ton rail car rate for each shipment by truck. For the shipment in question here, Westvaco absorbed all but $.27 of the cost of transportation through that allowance.
 
 
 5
 Carrier arrived at Westvaco on April 9, 1988, where he lined up behind other trucks waiting to be loaded. Carrier stated that he would typically drive his truck up to the loading ramp, park it where asked by the Westvaco employees, open his truck doors, and supervise the loading of the truck. He stated that federal law required him to make sure the freight was loaded in a certain way. While awaiting that loading, and after checking in with the Westvaco dispatcher, Carrier went to the employee cafeteria and ate a small snack. He then went outside and walked out on a Cooper River pier owned by Westvaco. While Carrier was standing on the pier smoking a cigarette, the pier collapsed, injuring him. He filed for and received from Ligon Trucking worker's compensation benefits for those injuries.
 
 
 6
 The South Carolina Workers' Compensation Act is the exclusive remedy for employees injured while working for their employers. S.C.Code Ann. Sec. 42-1-540 (Law. Co-op.1976). This sole remedy applies both to direct employees and statutory employees, as defined in S.C.Code Ann. Sec. 42-1-400 (Law. Co-op.1976). Section 42-1-400 provides:
 
 
 7
 When any person ... undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person ... (referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.
 
 
 8
 Under this statute, the district court found that Carrier was a statutory employee of Westvaco. Finding no genuine issue of material fact, the district held that it did not have subject matter jurisdiction to entertain Carrier's common law claims, so it granted a summary judgment in favor of Westvaco. Carrier argues on appeal that the district court erred because he could not be considered a statutory employee of Westvaco, and, even assuming that he was a statutory employee, he was outside of the scope of his employment at the time he was injured.
 
 
 9
 In South Carolina whether Carrier is an employee of Westvaco, thus falling within the Workers' Compensation Act, is a question of subject matter jurisdiction. Riden v. Kemet Electronics Corp., 437 S.E.2d 156, 157 (S.C. Ct.App.1993).
 
 
 10
 Stressing that "each case must be determined on its own facts," the South Carolina Supreme Court has delineated three factors to help with the determination of whether a worker is a statutory employee: (1) whether the work performed was an important part of the employer's trade or business, (2) whether the work was necessary or essential to, or an integral part of, the employer's business, and (3) whether the work ordinarily and customarily was or had been performed by the employer's regular employees. E.g., Smith v. T. H. Snipes & Sons, Inc., 411 S.E.2d 439, 440 (S.C.1991).
 
 
 11
 The record here supports a finding that Carrier was a statutory employee of Westvaco under all three tests above, and we do not infer that all three tests must be met. See Riden, 437 S.E.2d at 158; Woodard v. Westvaco Corp., 433 S.E.2d 890, 894 (S.C. Ct.App.1993). As a driver for Ligon, Carrier was picking up Westvaco's goods at a Westvaco plant and shipping them to a Westvaco customer. Westvaco absorbed almost all of the freight costs involved here. With approximately 30% of Westvaco's overall transportation done by trucking, it is obvious that trucking is an important, integral, and essential part of Westvaco's trade or business and that Carrier was performing that essential work when he undertook this shipment. See Corallo v. S. S. Kresge Co., 456 F.2d 306 (4th Cir.), cert. denied, 407 U.S. 911 (1972).
 
 
 12
 Moreover, Westvaco had previously equipped and maintained its own trucking division. Thus, the work Carrier was doing had been customarily performed by Westvaco's employees and Carrier there fore fits into the third test above. See Ost v. Integrated Prods., Inc., 371 S.E.2d 796, 799 (S.C.1988). Carrier was performing an important and essential part of Westvaco's business that Westvaco had previously performed itself. Accordingly, we are of opinion that Carrier was a statutory employee of Westvaco under South Carolina law and that the district court did not err when it found that to be so.
 
 
 13
 Carrier next argues that even assuming he was a statutory employee, he was not performing Westvaco's trade or business at the time of his injury. Carrier was injured while awaiting the loading of his truck on a Westvaco-owned pier. The Supreme Court of South Carolina has held that an employee remains within the workers' compensation umbrella when he or she undertakes activities both directly or incidentally related to their employment. Merrit v. Smith, 237 S.E.2d 366, 369 (S.C.1977); Beam v. State Workmen's Compensation Fund, 200 S.E.2d 83, 86 (S.C.1973).
 
 
 14
 Here, Carrier was performing an activity that was incidental to his trucking duties. He was waiting for his truck to be loaded, at which time he would supervise to make sure that it was done in compliance with federal law. He merely walked over to the pier to smoke a cigarette while awaiting his turn in line. Although smoking a cigarette is not directly related to Westvaco's trade or business, waiting at the pier to be loaded is very nearly so, and certainly waiting was sufficiently incidental to that trade or business for Carrier to have been found to be within the scope of his employment when he was injured. See, e.g., McCoy v. Easley Cotton Mills, 62 S.E.2d 772, 773-74 (S.C.1950) (employee injured while smoking cigarette in yard of the mill where he was working held to be in the course of his employment). We are of opinion that Carrier's waiting on the pier was incidental to, and thus within, the scope of his employment under South Carolina law.
 
 
 15
 The judgment of the district court is accordingly
 
 
 16
 AFFIRMED.