2549

Linda OSTEEN, Appellant v. GREENVILLE COUNTY SCHOOL
DISTRICT, Employer, and Self-Insurer, Respondent.

(475 S.E. (2d) 775)

Court of Appeals

*Richard V. Davis,* of *Christian & Davis,* Greenville, *for appellant.*

*Richard B. Kale, Jr.,* of *Haynsworth, Marion, McKay & Guerard,* Greenville, *for respondent.*

Heard June 4, 1996.

Decided July 22, 1996; Reh. Den. Sept. 24, 1996.

HEARN, Judge:

In this workers' compensation case, Linda Osteen appeals a circuit court order affirming the full commission, which reversed the single commissioner's determination that Osteen sustained a compensable work-related injury. She also appeals the dingle commissioner's compensation rate which was affirmed by the full commission and not addressed in the circuit court order. We reverse and remand.

## FACTS

The facts in this case are undisputed. Linda Osteen was employed by the Greenville County School District as an attendance clerk at Mountain View Elementary School. Osteen's

job function was clerical/secretarial work. In addition to maintaining the records for the attendance program, Osteen also provided office assistance, ran errands to the classrooms, was responsible for bulletin boards, delivered messages to teachers, sat in classrooms until the teachers returned, helped out in the health room, and handled mail delivery, messages, and supplies. Osteen's normal work week was Monday through Friday from 8:00 a.m. to 4:00 p.m. During the normal workday, Osteen did not leave for lunch and was expected to remain on the school grounds. School employees did not have regular breaks and there was no time clock at the school.

On Friday, August 21, 1992, Osteen placed an ice chest in her car prior to coming to work because she planned to obtain ice from the school cafeteria. Osteen's family had planned a picnic the next day at Lake Keowee. Osteen's son came to work with her to help with a school project. At approximately 3:00 p.m., Osteen left her office and went to her car in the school parking lot to get the ice chest. Osteen waited until then to get the ice so that it would not melt during the day. In addition, Osteen did not have access to the cafeteria at the end of the day because the doors were closed and locked after 4:00 p.m. Osteen filled the ice chest with ice from the cafeteria. She and her son, each taking a handle, carried the ice chest to her car. As Osteen lifted the ice chest to put into the trunk of her car, she felt a pain run down her legs and her lower back. After the injury, Osteen returned to work. Osteen estimated it took approximately 10 minutes to get the cooler, fill it with ice, and return to her desk. Osteen reported the injury to Robin Tate, the school secretary, who handled workers' compensation reports. Osteen had previously told Tate she was going to get ice. Osteen resumed her work and stayed until 4:00 p.m.

Osteen testified it was not a prohibited practice to get ice from the cafeteria. She stated it was a benefit for the employees. Walter Leppard, the principal of Mountain View Elementary School, also testified it was not a prohibited practice for employees to obtain ice from the cafeteria. He stated that although the school did not announce or advertise this practice, he considered it good for employer/employee relations. He testified Osteen would not have been penalized for taking time to fill a personal cooler with ice. Leppard further testi-

fied getting ice was not part of Osteen's job requirements but it would not have interfered with her job. However, he testified when she was getting the ice she was not performing any duties related to her job, and from that standpoint she had interrupted her job to do a personal errand.

Following the injury, Osteen became disabled and remained out of work from September 1, 1992, through February 15, 1993. Osteen returned to work for approximately three weeks, and again left work when she underwent surgery on March 11, 1993, for her injury, a herniated disk. Osteen ultimately returned to work on May 3, 1993.

On, April 6, 1994, Osteen filed a workers' compensation claim alleging she sustained an injury to her back and leg on August 21, 1992. The Greenville County School District denied Osteen sustained an injury by accident arising out of and in the course of employment as required by S.C. Code Ann. § 42-1-160 (1985).

On October 6, 1994, the single commissioner heard the case. By order dated November 28, 1994, the single commissioner found Osteen's injury arose out of the course and within the scope of her employment. The single commissioner found Osteen's actions were an insubstantial or slight deviation or detour, which did not remove her from the course and scope of her employment. The single commissioner further found Osteen's average weekly wage should be calculated under the "exceptional reasons" paragraph of S.C. Code Ann. § 42-1-40 by dividing Osteen's actual earnings for the year prior to the accident by 52 weeks. The single commissioner awarded Osteen a compensation rate of 129.45 per week for a period of 75 weeks (9,708.75) as permanent partial disability benefits, and temporary total benefits in the amount of $4,086.74 ($129.45 per week for 31.57 weeks).

Both parties filed requests for review of the single commissioner's order. The full commission heard the case on March 27, 1995. By order dated April 19, 1995, the commission reversed in part and affirmed in part the single commissioner's order. The commission found that Osteen's injury did not arise in the course and scope of her employment. The commission affirmed the single commissioner's calculation of Osteen's average weekly wage and compensation rate.

On May 1, 1995, Osteen appealed the commission's decision

to the circuit court. By order dated August 14, 1995, the circuit court affirmed the decision of the commission. The circuit court found there was substantial evidence to support the commission's findings of fact and the conclusion that Osteen was not acting within the course and scope of her employment at the time of the injury. Based on this decision, the circuit court did not review the compensation calculations. Osteen appeals.

## SCOPE OF REVIEW

The standard for judicial review of the decision of administrative agencies is contained in the Administrative Procedures Act. S.C. Code Ann. § 1-23-380 (Supp. 1995). The factual findings of the Commission will be upheld on appeal where there is substantial evidence to support them. *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 276 S.E. (2d) 304 (1981). Substantial evidence is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached to justify its action. *Miller by Miller v. State Roofing Co.*, 312 S.C. 452, 441 S.E. (2d) 323 (1994).

The question of whether an accident arises out of and is in the course and scope of employment is largely a question of fact for the Full Commission. *Grice v. National Cash Register Co.*, 250 S.C. 1, 156 S.E. (2d) 321 (1967); *Wright v. Bi-Lo, Inc.*, 314 S.C. 152, 442 S.E. (2d) 186 (Ct. App. 1994). However, where, as here, the facts are undisputed, the question of whether an accident is compensable is a question of law. *Jordan v. Dixie Chevrolet, Inc.*, 218 S.C. 73, 61 S.E. (2d) 64 (1950).

## ISSUE I

Osteen asserts her injury is compensable. She argues the injury occurred on the employer's premises, during work hours, and the activity, which was not prohibited by her employer, did not constitute a substantial deviation for her employment. We agree.

In order to be entitled to workers' compensation benefits, the employee must show he or she sustained an "injury by accident arising out of and in the course of

the employment." S.C. Code Ann. § 42-1-160 (1976). The term "arising out of" in the Workers' Compensation Act refers to the origin of the cause of the accident, which the term "in the course of" refers to the time, place, and circumstances under which the accident occurred. *Owings v. Anderson County Sheriff's Dep't*, 315 S.C. 297, 433 S.E. (2d) 869 (1993). "It has been well established for many years that work-connected activity goes beyond the direct services performed for the employer and includes at least some ministration to the personal comfort and human wants of the employee." Arthur Larson, *The Law of Workman's Compensation*, § 20.10, at 5-1 (1996).

The "personal comfort doctrine" developed from the concept that an employer receives an indirect benefit from those activities which appear to be purely personal to the employee. Professor Larson has defined the personal comfort doctrine as follows:

> Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

Arthur Larson, *The Law of Workmen's Compensation*, § 21.00, at 5-5 (1996).

A myriad of diverse fact situations have been held to fall under the generous umbrella of the personal comfort doctrine. For example, a truck driver who was injured when a shady overhanging embankment caved in while he was eating lunch;[1] an employee in a recreation park who drowned when he fell asleep during his lunch break on a raft that drifted offshore;[2] a worker who was injured while descending from a stack of cardboard boxes piled seven feet high where he had stretched out during his lunch hour;[3] a road construction laborer who

---

[1] *Indus. Comm'n v. Golden Cycle Corp.*, 126 Colo. 68, 246 P. (2d) 902 (1952) (en banc).

[2] *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W. (2d) 868 (1976).

[3] *Am. Motors Corp. v. Indus. Comm'n*, 1 Wis. (2d) 261, 83 N.W. (2d) 714 (1957).

was struck by a train while gathering firewood for a warming fire;[4] an airline attendant who was injured while lighting a cigarette during a layover in Venezuela;[5] a bus driver who slipped and fell on his way into McDonald's to use the restroom and get a cup of coffee;[6] and an employee who slipped on a pile of coal dust while running back to the canteen for a pack of chewing gum at the end of his dinner hour.[7] All these injuries have been held compensable under the personal comfort doctrine. Indeed, recovery has even been allowed where the activity engaged in was contrary to the employer's specific instructions.[8]

South Carolina courts have adopted the personal comfort doctrine. *In Mack v. Branch No. 12 Post Exchange, Fort Jackson*, 207 S.C. 258, 35 S.E. (2d) 838 (1945), an employee who arrived before the start of work was smoking a cigarette on the employer's premises. His leg was burned when a spark from his cigarette ignited his pants where he had spilled lighter fluid. The Supreme Court found the injury compensable. In reaching this conclusion, the court recognized the personal comfort doctrine and held:

> Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to

---

[4] *Geibig v. Ann Arbor Asphalt Constr. Co.*, 238 Mich. 560, 214 N.W. 90 (1927).

[5] *Pan Am. World Airways v. Wilmot*, 492 So. (2d) 1373 (Fla. Dist. Ct. App. 1986); *accord, see Mack v. Branch No. 12 Post Exchange, Fort Jackson*, 207 S.C. 258, 35 S.E. (2d) 838 (1945).

[6] *Ford v. Bi-State Dev. Agency*, 677 S.E. (2d) 899 (Mo. Ct. App. 1984).

[7] *Spratt v. Duke Power Co.*, 65 N.C. App. 457, 310 S.E. (2d) 38 (1983). The North Carolina courts have held that a broad range of activities fit into the personal comfort doctrine including: *Rewis v. New York Life Ins. Co.*, 226 N.C. 325 38 S.E. (2d) 97 (1946) (fall through open washroom window while getting fresh air); *Fox v. Cramerton Mills, Inc.*, 225 N.C. 580, 35 S.E. (2d) 869 (1945) (smoke break involving a temporary absence from employee's post of duty); *Pickard v. E.M. Holt Plaid Mills Inc.*, 213 N.C. 28, 195 S.E. 28 (1938); (break to partake of refreshment); *Bellamy v. Great Falls Mfg. Ct.*, 200 N.C. 676, 158 S.E. 246 (1931) (personal errand).

[8] *Hensley v. Caswell Action Comm. Inc.*, 296 N.C. 527, 251 S.E. (2d) 399 (1979) (deceased youth hired to cut weeds around a lake compensated for accidental drowning occurring when he, contrary to instructions, attempted to wade across the lake to cut weeds he had missed); *Hartley v. N.C. Prison Dept.*, 258 N.C. 287, 128 S.E. (2d) 598 (1962) (prison guard compensated for in-

service, and injury sustained in the performance thereof is deeded to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In there and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment. *Id.* at 264-65, 35 S.E. (2d) at 840 (quoting *Whiting-Mead Co. v. Indus. Accident Comm'n*, [178 Cal. 505] 173 P. 1105, 1106 (1918)).

Applying the reasoning in *Mack*, the Supreme Court in *McCoy v. Easley Cotton Mills*, 218 S.C. 350, 62 S.E. (2d) 772 (1950), found an employee's injury was compensable where he was injured by a piece of copper piping that accidentally struck him in the eye during a smoking break. The Court reasoned: "While smoking was not, or course, one of the obligatory duties of his employment, yet it was something permitted by the employer. Consequently, no break in claimant's employment resulted form the fact that he temporarily left his job and walked outside the building to smoke." *Id.* at 354-55, 62 S.E. (2d) at 773-74.

In *Cauley v. Ross Builders Supplies, Inc.*, 238 S.C. 38, 118 S.E. (2d) 879 (1961), the Supreme Court upheld an award of compensation for an injury sustained by a carpenter which oc-

---

that walk around through the gate to relieve another guard in a nearby tower); *Parsons v. Swift & Co.*, 234 N.C. 580, 68 S.E. (2d) 296 (1951) (wheelbarrow hauler who was prohibited by company rule from operating a tractor, entitled to death benefits when he was killed in attempting to move a tractor blocking his path); *Riddick v Richmond Cedar Works*, 227 N.C. 647, 43 S.E. (2d) 850 (1947) (lumber stacker warned to stay away from saws in employer's lumber plant compensated for injuries sustained when he attempted to help co-employee saw a board); *Howell v. Standard Ice & Fuel Co.*, 226 N.C. 730, 40 S.E. (2d) 197 (1946) (deceased coal car sweeper who was injured when he stood on unprotected portion of railway platform waiting for a car to be moved entitled to compensation despite instruction to stand only in a specified place for safety); *Archie v. Greene Bros. Lumber Co.*, 222 N.C. 477, 23 S.E. (2d) 834 (1943) (deceased logger entitled to compensation for mortal injuries sustained when he, contrary to company rules, attempted to board a log car to ride from work site along the company's railroad line back to camp).

curred during a five-minute deviation from his work. While cutting the wood for a display counter, Cauley first used part of the wood to make a wedge for a co-employee to be used to level a mantel clock in his home. Cauley was injured while pushing the board through the joiner. In reaching it's decision, the Court reasoned that although the activity was entirely personal to Cauley's co-employee, it was compensable because the deviation was insubstantial.

Here, Ms. Osteen was injured during working hours, on the premises, while engaged in an activity permitted by her employer. Her principal stated that he considered the practice of removing ice from the cafeteria in furtherance of employer/employee relations. We believe this activity falls squarely within the personal comfort doctrine previously recognized by the Supreme Court in *Mack v. Branch No. 12 Post Exchange, Fort Jackson*. Moreover, under the reasoning of *Cauley*, even if the activity was entirely personal to Osteen, her injury is compensable because the deviation from her employment was insubstantial. We hold the full commission committed an error of law in ruling that Osteen's injury did not arise in the course and scope of her employment.

## ISSUE II

Ms. Osteen argues the single commissioner's compensation rate which was affirmed by the full commission was calculated incorrectly. The circuit court judge declined to rule on the calculations of the compensation rate because he affirmed the full commission's ruling on compensability. Accordingly, we reverse the circuit court's affirmance of the full commission, reinstate the order of the single commissioner and remand to the circuit court to make findings as to the compensation rate.

Reversed and remanded.

CONNOR, J., concurs.

HUFF, J., dissents in a separate opinion.

HUFF, Judge (dissenting):

I disagree with the majority that Osteen's injury is compensable. The full commission heard the case on March 27, 1995 and found that Osteen's injury did not arise in the course

and scope of her employment. The commission affirmed the single commissioner's calculation of Osteen's average weekly wage and compensation rate. Additionally, the circuit court affirmed the decision of the commission finding there was substantial evidence to support the commission's findings of fact and the conclusion that Osteen was not acting within the course and scope of her employment at the time of the injury.

In order to be entitled to workers' compensation benefits, the employee must show he or she sustained an "injury by accident arising out of and in the course of the employment." S.C. Code Ann. § 42-1-160 (1985). The term "arising out of" in the Workers' Compensation Act refers to the origin of the cause of the accident, while the term "in the course of" refers to the time, place, and circumstances under which the accident occurred. *Owings v. Anderson County Sheriff's Department*, 315 S.C. 297, 433 S.E. (2d) 869 (1993). "An injury arises out of employment where there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury." *Id.* If the injury can be seen to have followed as a natural incident of the work and as a result of the exposure occasioned by the nature of the employment, then it arises out of the employment. *Holley v. Owens Corning Fiberglass Corp.*, 301 S.C. 519, 392 S.E. (2d) 804 (Ct. App. 1990), *aff'd*, 302 S.C. 518, 397 S.E. (2d) 377 (1990). But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. *Jones v. Hampton Pontiac*, 304 S.C. 440, 405 S.E. (2d) 395 (1991) (quoting *Eargle v. South Carolina Electric and Gas*, 205 S.C. 423, 32 S.E. (2d) 240 (1994)).

Osteen relies on a spectrum of cases in which compensation was allowed for an injury occurring on the employer's premises resulting from an activity which constituted a slight deviation from employment.

In *Mack v. Branch No. 12 Post Exchange, Fort Jackson*, 207 S.C. 258, 35 S.E. (2d) 838 (1945), the employee, who arrived before the start of work, was smoking a cigarette on the employer's premises, which ignited his pants and burned his leg where he had spilled lighter fluid. The Supreme Court

found the injury compensable. In reaching this conclusion, the Court enunciated the following rule:

> Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work * * * That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.

The Court further stated "[s]light deviations are no defense under most state decisions. Thus a slight deviation to get a chew of tobacco, or to ask a fellow employee the time, or to throw away a cigarette, is harmless, and awards were upheld where the injury occurred during the deviation."

Applying the reasoning in *Mack*, the Supreme Court in *McCoy v. Easley Cotton Mills*, 218 S.C. 350, 62 S.E. (2d) 772 (1950), found an employee's injury was compensable where he was injured by a piece of copper piping that accidentally struck him in the eye during a smoking break. The Court reasoned, "[w]hile smoking was not, or course, one of the obligatory duties of his employment, yet it was something permitted by the employer. Consequently, no break in claimant's employment resulted from the fact that he temporarily left his job and walked outside the building to smoke."

*Mack* and *McCoy* are distinguishable in that those cases involved smoking, which the court found as a necessary function, such as breathing or drinking, which contributed to the furtherance of the employee's work. Here, Osteen was not performing a function that would help her perform her work. She was getting ice for a family picnic that was to occur the following day.

In this same line of cases, Osteen also relies on *Portee v. South Carolina State Hospital*, 234 S.C. 50, 106 S.E. (2d) 670

(1959). In *Portee,* a hospital attendant died from anaphylactic shock caused by an injection of procaine penicillin administered by a technician at the hospital at the attendant's request to avoid infecting patients from his sore throat. The Supreme Court found the employee suffered an injury by accident which arose out of and in the course of his employment. The Court found the slight deviation of the deceased to obtain medication for his sore throat did not break the chain of employment. The Court stated it was a close question of whether the occurrence arose out of his employment. In reaching its decision, the Court relied on the fact that the injection was done not only for the purpose of relieving the deceased's personal discomfort, but also to avoid passing the infection to the other patients.

*Portee* is also distinguishable from the instant case. In *Portee,* the employee was not only seeking to relieve personal discomfort, but also to avoid infecting other patients in furtherance of his work. In this case, Osteen's activity was solely for her personal benefit and did not in any way benefit her employer.

Osteen cites *Cauley v. Ross Builders Supplies, Inc.,* 238 S.C. 38, 118 S.E. (2d) 879 (1961), for the proposition that insubstantial deviations form employment which result in injury are compensable accidents even though the accident involved personal activities. In *Cauley,* the Supreme Court upheld an award of compensation for an injury sustained by a carpenter which occurred during a five-minute deviation from his work. While cutting the wood for a display counter, Cauley used part of the wood to make a wedge for a co-employee to be used to level a mantel clock in his home. Cauley was injured while pushing the board through the joiner. The Court reasoned that, although the activity was entirely personal to Cauley's co-employee, it was compensable because the deviation was insubstantial. *See* also *Jordan v. Dixie Chevrolet, Inc.,* 218 S.C. 73, 61 S.E. (2d) 654 (1950) (injury arose out of and in the course and scope of employment where garage employee was injured during idle time when he removed a tear gas bomb from a customer's vehicle; an injury may be regarded as arising out of the employment if it resulted from a risk or danger to which the workman was exposed by reason of being engaged in the performance of his duties although

such risk or danger was not inherent in and not necessarily essential to the activities of the employment).

*Cauley* and *Jordan* are also distinguishable in that the injury occurred during an activity which was incidental to the employee's normal employment. Although Osteen's activity involved only a ten-minute deviation from her normal duties, it cannot be characterized as insubstantial. The act of getting ice and lifting the ice cooler was not in any way related to her normal secretarial/clerical duties.

I also find support for my conclusion in *Douglas v. Spartan Mills*, 245 S.C. 265, 140 S.E. (2d) 173 (1965), wherein our Supreme Court held an injury caused by an automobile accident which occurred while claimant was traveling to a workers' compensation hearing did not arise out of and in the course of his employment. The Court reasoned at the time of the accident the claimant was not fulfilling his duties as a doffer, and was not performing anything incidental to his normal duties. Specifically, the court stated:

> The causative danger here was the defective steering apparatus on the claimant's automobile, which we think was clearly independent of the relation of master and servant and not incidental to the character of the business or the employment. We cannot see where the danger here had its origin in any risk connected with the employment or flowed from that source as a rational consequence.

Osteen also relies on *Camp v. Spartan Mills*, 302 S.C. 348, 396 S.E. (2d) 121 (Ct. App. 1990), for the general rule that an employee's activities at work on the employer's premises may be compensable even though the employee is not engaged in any particular work activity or job-related task. *See* also *Williams v. South Carolina State Hospital*, 245 S.C. 377, 140 S.E. (2d) 601 (1965). However, an accidental injury is not rendered compensable by the mere fact that it occurred on the employer's premises; the claimant must show also that the accident was connected with or incident to the performance of the duties of his employment. *Evans v. Jones-Wilson, Inc.*, 235 S.C. 219, 110 S.E. (2d) 851 (1959).

It is undisputed that Osteen's injury occurred while at work, on the employer's premises. However, there is no causal relationship between Osteen's job as an attendance clerk and

the injury. At the time she was injured, Osteen was not performing any duties in relation to her employment or incidental to her employment. Obtaining ice for a family picnic the following day was not "necessary to the life, comfort, and convenience" of Osteen while she was at work. Further, Osteen's secretarial/clerical duties did to expose her to the risk of this type of injury. Although Osteen's deviation from her work was only for ten minutes, it cannot be said that it was an insubstantial deviation. Osteen's deviation was for a personal errand not in any way related to or incidental to her employment. Moreover, I do not find dispositive the fact that the principal did not prohibit employees from getting ice from the cafeteria. Even though the practice was not prohibited, it was not encouraged in that it was neither advertised nor announced. *See Beam v. State Workmen's Compensation Fund,* 261 S.C. 327, 200 S.E. (2d) 83 (1973) ("Employment connection may be supplied by varying degrees of employer encouragement or direction. The clearest case of coverage is that of a teacher who is directed to attend a teacher's institute. It is also sufficient if attendance, although not compulsory, is definitely urged or expected but not if it is merely encouraged"). Based on my review of the record, I find Osteen's injury did not arise out of and in the course of her employment. Accordingly, I would affirm the order of the circuit court.